UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

STEVEN E. SHIVALEC

        Plaintiff,

    v.                                    Case No. 17-CV-1245

MILWAUKEE MIXED METAL CYCLES LLC, *et al.*

        Defendants.

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Defendants, Milwaukee Mixed Metal Cycles LLC (hereinafter, when referred to individually, "Defendant MMMC"), and Ronald Olson (hereinafter, when referred to individually, "Defendant Olson"), violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Wisconsin's Wage Payment and Collection Laws ("WWPCL"), by failing to compensate Plaintiff, Steven E. Shivalec, for all hours Defendants suffered or permitted him to work, including at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek.

Given the evidentiary record before the Court, summary judgment is appropriate in this case and in favor of Mr. Shivalec because there is no genuine dispute as to any material fact and Mr. Shivalec is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

Mr. Shivalec fully incorporates herein Plaintiff's Proposed Findings of Fact ("PPFOF"), which has been filed with the Court. The following is a summary of the facts in this case.

Defendant MMMC is a motorcycle repair shop that provides motorcycle maintenance, repair, and custom work. (PPFOF, ¶ 1.) It is not engaged in the business of selling automobiles, trucks, farm implements, trailers, boats, snowmobiles, other recreational vehicles, or aircraft to the general public or purchasers. (*Id.* at ¶ 2.) During Mr. Shivalec's employment at Defendant MMMC, Defendant MMMC employed more than two (2) employees, (*id.* at ¶ 5), engaged in commerce, (*id.* at ¶ 4), and had annual sales exceeding $500,000.00. (*Id.* at ¶ 3.)

Defendant Olson is and was the Owner of Defendant MMMC during Mr. Shivalec's employment at Defendant MMMC. (*Id.* at ¶ 7.) During Mr. Shivalec's employment at Defendant MMMC, Defendants were "employers" of Mr. Shivalec, as that term is defined under the FLSA and WWPCL. (*Id.* at ¶ 6.)

Defendants employed Mr. Shivalec as a Motorcycle Mechanic from December 1, 2015, through August 26, 2017. (*Id.* at ¶ 8.) Defendant Olson interviewed and made the decision to hire Mr. Shivalec. (*Id.* at ¶ 19.)

As a Motorcycle Mechanic, Mr. Shivalec's job duties included performing manual labor and mechanical work on motorcycles in Defendant MMMC's "shop," located in the basement of its physical location, and driving to pick up parts and motorcycles on behalf of Defendants. (*Id.* at ¶ 9.) During Mr. Shivalec's employment at Defendant MMMC and with the exception of approximately the last six (6) months of his employment, Mr. Shivalec was Defendants' only full-time Motorcycle Mechanic. (*Id.* at ¶ 11.)

In his position as Motorcycle Mechanic, Mr. Shivalec reported directly to Defendant Olson, (*id.* at ¶ 14), and performed compensable work at the direction and with the knowledge of Defendant Olson. (*Id.* at ¶¶ 22-23.) During Mr. Shivalec's employment at Defendant MMMC, Defendant Olson: established and determined that Mr. Shivalec be compensated on an hourly basis, (*id.* at ¶ 20);

established and determined Mr. Shivalec's hourly rates of pay, (*id.* at ¶ 21); directed the work that Mr. Shivalec was to perform via Defendants' "job board,"[1] (*id.* at ¶ 24); tracked the length of time it took Mr. Shivalec to complete each work order and compared the same against the number of hours he estimated for completion of the work order, (*id.* at ¶ 25); established and determined Mr. Shivalec's work schedule and hours of work, (*id.* at ¶ 27); established the work rules, policies, and procedures by which Mr. Shivalec abided in the workplace, (*id.* at ¶ 28); controlled the terms and conditions of Mr. Shivalec's employment, (*id.* at ¶ 29); maintained the ability to hire, fire, and discipline Mr. Shivalec, (*id.* at ¶ 30); and monitored and reviewed Mr. Shivalec's work performance. (*Id.* at ¶ 31).

During Mr. Shivalec's employment at Defendant MMMC, his usual or customary weekly work schedule was Tuesdays through Fridays, from 9:00 a.m. to 6:00 p.m., and Saturdays, from 9:00 a.m. to 3:00 p.m. (*Id.* at ¶ 32.) In the event he arrived to work earlier or stayed later than Defendant Olson, Defendants provided Mr. Shivalec keys to open or lock-up Defendant MMMC. (*Id.* at ¶ 12.)

On any days that Defendants scheduled Mr. Shivalec to work eight (8) or more hours in a workday, Defendant Olson expected Mr. Shivalec to take a thirty (30) minute lunchbreak. (*Id.* at ¶ 71). However, Mr. Shivalec did not have a scheduled time during his workday to take a thirty (30) minute lunchbreak, (*id.* at ¶ 72), Defendant Olson typically did not monitor whether Mr. Shivalec took a thirty (30) minute lunchbreak, (*id.* at ¶ 73), and Defendants did not require Mr. Shivalec to "punch out" for lunchbreaks, (*id.* at ¶ 74), unless he left Defendants' premises. (*Id.* at ¶ 75.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants compensated Mr. Shivalec on an hourly basis with an hourly rate of pay. (*Id.* at ¶ 15.) At the outset of his employment, Defendants compensated Mr. Shivalec with an hourly rate of $18.00 per hour. (*Id.* at ¶ 16.) Beginning

---

[1] Defendants' "job board" was a metal file board that contained Defendants' work orders in order of priority. (*Id.* at ¶ 24.) Work orders on top were "top priority," while work orders on the bottom were "lowest priority." (*Id.*) Defendant Olson was kept apprised of the work Mr. Shivalec performed vis-à-vis the "job board" because any work orders he completed were filed in the bottom slot of the board. (*Id.* at ¶ 26.)

Tuesday, February 16, 2016, Defendants increased Mr. Shivalec's hourly rate to $22.00 per hour. (*Id.* at ¶ 17.) As of his last day of employment on August 26, 2017, Mr. Shivalec's hourly rate remained $22.00 per hour. (*Id.* at ¶ 18.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants did not have and Mr. Shivalec was not subject to, any written employment policies, procedures, or work rules. (*Id.* at ¶ 33.) However, subsequent to the filing of Mr. Shivalec's Complaint in this matter, Defendants created an Employee Handbook and/or written policies and procedures by which employees of Defendants must abide in the workplace. (*Id.* at ¶ 35.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants utilized a physical, mechanical punch clock and timecards for purposes of recording Mr. Shivalec's hours worked. (*Id.* at ¶ 39.) Defendants did not utilize any other system for tracking or recording his hours. (*Id.* at ¶ 40.)

While Mr. Shivalec primarily worked in the basement of Defendant MMMC, (*id.* at ¶ 9), Defendant Olson primarily worked on the first floor. (*Id.* at ¶ 13.) Thus, while Defendant Olson frequently physically came and went through Defendants' "shop" and ensured compensable work was being performed, (*id.* at ¶ 36), generally monitored Mr. Shivalec work performance, (*id.* at ¶ 31), and demonstrated his knowledge of when compensable work was being performed, even when he was not necessarily watching, (*id.* at ¶ 37), he could not constantly monitor whether Mr. Shivalec was performing compensable work. (*Id.* at ¶ 47.) Accordingly, Defendants operated an "honor system" with respect to the hours of work recorded by Mr. Shivalec each work day, (*id.*), and expected Mr. Shivalec to record his hours of work accurately using its punch clock and timecard system. (*Id.* at ¶ 43.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants compensated Mr. Shivalec on a bi-weekly basis for the immediately prior two (2) workweeks of work performed, (*id.*

at ¶ 50), customarily paying him via physical paycheck, (*id.* at ¶ 61), on the Friday following the two (2) workweeks comprising the bi-weekly pay period. (*Id.* at ¶ 52.) Defendants' stated workweek for compensation purposes was Monday through Saturday, (*id.* at ¶ 41), and Defendant Olson handled Defendants' payroll. (*Id.* at ¶ 38.) As part of Defendants' payroll process, Defendant Olson determined Mr. Shivalec's compensable hours of work and the amount of compensation Mr. Shivalec received. (*Id.* at ¶¶ 51, 54.)

Each workweek, Mr. Shivalec used a new timecard to record his compensable hours of work each workday by "punching in" on his timecard at the start of his shift and prior to performing compensable work, and "punching out" at the end of his shift and subsequent to performing compensable work. (*Id.* at ¶¶ 42, 45-46.) Each workday, Mr. Shivalec recorded his hours of work accurately using Defendants' punch clock and timecard system, (*id.* at ¶ 44), and performed compensable work immediately after "punching in" and before "punching out." (*Id.* at ¶ 46.) Thus, during Mr. Shivalec's employment at Defendant MMMC, Mr. Shivalec's mechanical punches via Defendants' punch clock system corresponded to his action hours worked. (*Id.* at ¶ 57.)

After "punching in" or "punching out," Mr. Shivalec placed his timecard in his designated slot in a timecard rack next to the punch clock. (*Id.* at ¶ 49). Then, on the Wednesday or Thursday preceding the Friday upon which Defendants compensated Mr. Shivalec, Defendant Olson collected Mr. Shivalec's timecards for his immediately prior (2) workweeks for purposes of conducting payroll. (*Id.* at ¶¶ 38, 53.)

Subsequent to collecting Mr. Shivalec's timecards, Defendant Olson determined Mr. Shivalec's compensable hours of work each workday and handwrote them on Mr. Shivalec's timecards. (*Id.* at ¶ 54.) Defendant Olson based this determination on Mr. Shivalec's scheduled hours of work, rather than the number of hours Mr. Shivalec recorded via mechanical punch. (*Id.* at ¶¶ 55,

5

58.) In basing this determination on Mr. Shivalec's scheduled hours of work, Defendant Olson further automatically deducted thirty (30) minutes of work time from each of Mr. Shivalec's workdays in which he was scheduled to and did work more than eight (8) hours, regardless of whether Mr. Shivalec took a lunchbreak of or "punched out" for at least thirty (30) consecutive minutes. (*Id.* at ¶¶ 77, 88.) Thus, for example, on days when Mr. Shivalec was scheduled to work nine (9) hours, Defendant Olson handwrote "8.5" hours as the number of hours Mr. Shivalec worked for purposes of calculating Mr. Shivalec's compensable hours of work that workday, regardless of whether Mr. Shivalec actually worked more than nine (9) hours in the workday and/or took a work-free lunchbreak of at least thirty (30) consecutive minutes. (*Id.* at ¶¶ 54-55, 58, 88.) Defendants then compensated Mr. Shivalec based on the total number of compensable hours handwritten by Defendant Olson, (*id.* at ¶ 56), rather than the actual hours of work recorded by Mr. Shivalec each workweek. (*Id.* at ¶¶ 58-59.)

As a result of these timekeeping and payroll practices, Defendants miscalculated Mr. Shivalec's compensable hours of work almost every workweek, (*id.* at ¶ 60), and failed to compensate him for all hours they suffered or permitted him to work. (*Id.* at ¶ 61.)

At the same time, and during Mr. Shivalec's period of employment, Defendants did not have any policies or procedures, written or unwritten: regarding compensation, recording hours worked, or overtime, (*id.* at ¶ 68); regarding breaks or meal/lunch periods, (*id.* at ¶ 78); that Mr. Shivalec was to follow (or could follow) in the event that he did not take a lunchbreak of at least thirty (30) consecutive minutes, took a lunchbreak less than thirty (30) consecutive minutes in duration, or ate while performing compensable work,[2] (*id.* at ¶ 86);or that Mr. Shivalec was to follow (or could follow) in the event that he believed his compensation or compensable hours as recorded by Defendants were

---

[2] Mr. Shivalec usually or customarily did not take a lunchbreak of at least thirty (30) consecutive minutes, but rather ate while working. (*Id.* at ¶¶ 80-81.)

incorrect or inaccurate. (*Id.* at ¶¶ 65-67.) Similarly, Defendant Olson did not tell Mr. Shivalec what to do in such events, for the stated reason that Mr. Shivalec "is an adult." (*Id.* at ¶¶ 66, 87.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants also operated a "time trading" system, whereby Defendant Olson purchased personal items for Mr. Shivalec through Defendant MMMC and then took reimbursement for the same by deducting compensable hours of work from Mr. Shivalec equivalent to the value of the personal items. (*Id.* at ¶¶ 92-94.) Defendants then did not compensate Mr. Shivalec for the hours that were deducted. (*Id.* at ¶ 94.) However, on occasions where the number of compensable hours deducted exceeded the costs of the personal items to be reimbursed, Defendant Olson paid Mr. Shivalec the difference in cash. (*Id.* at ¶ 95.)

In total, Defendants "traded" Mr. Shivalec's compensable hours of work for approximately $1,883.20 in reimbursements for personal items and cash. (*Id.* at ¶ 96.) Defendants made these deductions based on Defendant Olson's handwritten hours, rather than Mr. Shivalec's actual hours of work as recorded by his punches, (*id.* at ¶ 98), and made them before calculating Mr. Shivalec's bi-weekly compensation owed, rather than first calculating his compensation owed and then deducting the actual value of the personal items subject to reimbursement. (*Id.* at ¶ 99.)

On occasions when Defendants deducted compensable overtime hours from Mr. Shivalec for purposes of reimbursing Defendant MMMC for purchases of personal items, Defendant did so at an overtime rate of $28.00 per hour, rather than one and one-half times Mr. Shivalec's regular hourly rate of $22.00, or $33.00 per hour. (*Id.* at ¶ 100.) As a result, Defendants frequently miscalculated the deductions, deducting and not compensating Mr. Shivalec for hours equating to a value greater than the amount to be reimbursed. (*Id.* at ¶¶ 101-112.)

Further and during Mr. Shivalec's employment at Defendant MMMC, Defendants periodically did not compensate Mr. Shivalec for all hours worked in excess of forty (40) in a workweek as calculated by Defendant Olson. (*Id.* at ¶¶ 113-119.)

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993), *holding modified by Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420 (4th Cir. 2000).

In ruling on a motion for summary judgment, the non-moving party is entitled to only *reasonable* inferences, not every *conceivable* inference. *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994) (emphasis added). Indeed, "[i]nferences that are supported only by conjecture or speculation will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). "The evidence must create more than some metaphysical doubt as

8

to the material facts." *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (citations omitted).

For the reasons stated below, Mr. Shivalec is entitled to summary judgment in this case because there are no genuine disputes as to any material facts in this case and judgment may be rendered in Mr. Shivalec's favor and against Defendants as a matter of law.

## II. DEFENDANTS ARE JOINT AND SEVERALLY LIABLE FOR VIOLATING THE FLSA AND WWPCL BY FAILING TO COMPENSATE MR. SHIVALEC FOR ALL HOURS WORKED, INCLUDING AT AN OVERTIME RATE OF PAY FOR ALL HOURS WORKED IN EXCESS OF FORTY IN A WORKWEEK, AND BY MAKING IMPROPER DEDUCTIONS TO HIS COMPENSATION

Defendants do not dispute that they were "employers" of Mr. Shivalec during his employment at Defendant MMMC and as that term is defined under the FLSA and WWPCL. (PPFOF, ¶ 6.) Accordingly, Defendant MMMC and Defendant Olson are joint and severally liable for their violations of the FLSA and WWPCL. *See Donovan v. Agnew*, 712 F.2d 1509, 1513 (1st Cir. 1983).

The FLSA and WWPCL mandate that that employees be paid overtime at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek. Specifically, 29 U.S.C. § 207(a)(1) states, in part: "no employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Similarly, WIS. ADMIN. CODE § DWD 274.03 states, in part: "each employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." The WWPCL further mandates that employers compensate its employees for all hours worked,

including those not worked in excess of forty (40) hours in a workweek, at their agreed-upon wage. *See* WIS. STAT. §§ 109.01(3), 109.03(1).

As explained below, Defendants violated the FLSA and WWPCL by unlawfully failing to compensate Mr. Shivalec for all hours worked, including at the correct overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek, as a result of: (1) not compensating Mr. Shivalec based on his actual hours of work as recorded by Mr. Shivalec, but rather based on Mr. Shivalec's scheduled hours of work as determined by Defendant Olson; (2) automatically deducting thirty (30) minutes of compensable time from Mr. Shivalec's hours on workdays when he did not take a work-free lunchbreak of at least thirty (30) consecutive minutes, performed compensable work during his lunchbreak, or "punched out" for less than thirty (30) consecutive minutes; and (3) improperly deducting compensable hours from Mr. Shivalec, the value of which exceeded the value of the personal items being reimbursed.

There is no genuine dispute that these violations occurred. Accordingly, summary judgment in favor of Mr. Shivalec and against Defendants is proper.

### A. Defendants Violated The FLSA And WWPCL By Failing To Compensate Mr. Shivalec For All Hours They Suffered Or Permitted Mr. Shivalec To Work, As Recorded On His Timecards

The FLSA and WWPCL provide that all time that employers suffer or permit an employee to work must be compensated. *See* 29 U.S.C. §§ 206(a), 207(a); WIS. STAT. §§ 109.01(3), 109.03(1). "Work not requested but suffered or permitted is work time … The reason is immaterial." 29 C.F.R. § 785.11.

"The FLSA imposes an obligation on the employer 'to exercise its control and see that the work is not performed if it does not want it to be performed.'" *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.13); *see also Allen v. City of Chicago*, 865

F.3d 936, 938 (7th Cir. 2017), *cert. denied sub nom. Allen v. City of Chicago, Ill.*, 138 S. Ct. 1302 (2018) ("If the employer does not want to pay overtime, its management must exercise its control and see that the work is not performed."). "The employer cannot sit back and accept the benefits without compensating for them. 'The employer's duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours.'" *Kellar*, 664 F.3d at 177 (citing *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008).

"However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Id.* "The employer's knowledge can be either actual or constructive." *Allen*, 865 F.3d at 938. An "employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business. An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision." *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (internal citations omitted). "The cases must be rare where prohibited work can be done and knowledge of the consequences of knowledge avoided." *Id.* (internal citations omitted).

"In reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* were such that the employer had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." *Id.* (emphasis in original) (internal citations omitted); *see also Allen*, 865 F.3d at 938 ("An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence."). Stated differently, an "employer can only escape liability by showing that in addition to not having actual knowledge of the work, it did not have constructive knowledge

11

because reasonable diligence would not have helped the employer learn of the work." *Meadows v. NCR Corp.*, 2017 WL 5192009, at *8 (N.D. Ill. Nov. 9, 2017).

An employer's knowledge of overtime work being performed "need not arise *concurrently* with the performance of overtime, for good reason." *Chao*, 514 F.3d at 287 (emphasis in original). "The [FLSA's] overtime provisions apply to work performed off premises, outside of the employer view and sometimes at odd hours, where an employer's concurrent knowledge of an employee's labor is not the norm." *Id.*

In this case, the undisputed facts show that Defendant had actual, or at the very least constructive, knowledge of the compensable hours Mr. Shivalec was working, including hours in excess of forty (40) in a workweek. It is undisputed that: (1) Defendants' sole method of tracking or recording Mr. Shivalec's hours worked were its punch clock and timecards, (PPFOF, ¶¶ 39-40); (2) Defendants expected Mr. Shivalec to record his hours of work accurately using its punch clock and timecards, (*id.* at ¶ 43); (3) Mr. Shivalec recorded his hours of work accurately using Defendants' punch clock and timecards, (*id.* at ¶ 44); (4) Defendant Olson collected and reviewed Mr. Shivalec's timecards and conducted payroll for Defendants, necessitating that he review Mr. Shivalec's hours of work as recorded by Mr. Shivalec, (*id.* at ¶¶ 38, 53-54, 58); (5) Defendant Olson did not take any action to stop or prevent Mr. Shivalec from performing compensable work before the start or after the end of his scheduled shift, (*id.* at ¶ 70); (6) Defendant Olson did not discipline Mr. Shivalec for performing compensable work before the start or after the end of his scheduled shift, (*id.*); (7) Defendant Olson monitored and reviewed Mr. Shvialec's work performance, (*id.* at ¶ 31); (8) Defendant Olson frequently physically came and went through the "shop," ensuring compensable work was being performed, (*id.* at ¶ 36); (9) Defendant Olson tracked Mr. Shivalec's completed work orders and the length of time it took him to complete each

12

one, (*id.* at ¶¶ 25-26); (10) Defendant Olson demonstrated his knowledge that work was being performed, even when he was not necessarily watching, (*id.* at ¶ 37);  and, (11) Defendants did not have any policies or procedures, written or unwritten, regarding compensation, recording hours worked, or overtime, (*id.* at ¶ 68), or instructing Mr. Shivalec how to report inaccuracies in his compensation or compensable hours. (*Id.* at ¶¶ 33, 65-67.)

Despite these facts and in spite of Defendants' operating an "honor system" with respect to the hours of work recorded by Mr. Shivalec each workday, (*id.* at ¶ 47), the record is unquestionably clear that Defendant Olson disregarded Mr. Shivalec's hours of work as he recorded them using Defendants' punch clock and timecard system, in favor of compensating Mr. Shivalec based solely upon his scheduled hours of work. (*Id.* at ¶¶ 51, 54-56, 58-59.) The record further establishes that Defendant Olson's disregard of Mr. Shivalec's actual hours worked was based on nothing more than his assumption that Mr. Shivalec, "as an adult," would not work more than forty (40) hours in a workweek because Defendants did not compensate him for more than forty (40) hours in a workweek unless Defendant Olson explicitly asked him to work overtime. (*Id.* at ¶ 70.)

Based on these facts, Defendants had actual knowledge – or at the very least constructive knowledge – of the hours, including overtime hours, Mr. Shivalec worked each workweek and intentionally disregarded the same to avoid compensating him. In so doing, Defendants blatantly violated the FLSA and WWPCL. *See Kellar*, 664 F.3d at 177 ("The employer cannot sit back and accept the benefits without compensating for them."); *see also Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 816 (N.D. Ill. 2011) (finding that the defendants' use of altered time records to calculate payroll "runs afoul of the plain mandate of the FLSA, which requires employer to pay employees a minimum wage—and overtime where applicable—for all hours worked.");

*U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 779 (6th Cir. 1995) (finding that the employer unlawfully compensated employees where it recorded only the scheduled shift hours on employees' time sheets, rather than their actual hours worked).

Additionally, to the extent that Defendants allege that they compensated Mr. Shivalec based on his scheduled hours, rather than his hours of work as he recorded them, because Defendant Olson could not constantly monitor Mr. Shivalec, such an argument is unavailing in light of the foregoing facts and case precedent. *See Dominguez*, 790 F. Supp. 2d at 816 (noting that an employer "cannot monitor every employee and determine the millisecond each employee actually begins and finishes working. But the answer to a self-willed employee, who chooses to set his or her own schedule, is to discipline or fire the employee…It is not, however, to refuse to pay for time actually worked."). Notably, Defendant Olson never disciplined Mr. Shivalec for reporting his hours inaccurately or for performing compensable work outside of his scheduled shift. (*See* PPFOF, ¶ 70.)

As a result of Defendants' violations of the FLSA and WWPCL in these respects, Defendants miscalculated Mr. Shivalec's compensable hours of work almost every workweek, (*id.* at ¶¶ 60, 120), further resulting in their failure to properly and lawfully compensate Mr. Shivalec for all hours Defendants suffered or permitted him to work each workweek. (*Id.* at ¶¶ 61, 121.) Indeed, Plaintiff's calculations demonstrate that Defendant Olson's practice of calculating Mr. Shivalec's compensable hours based on his scheduled hours of work, rather than the hours of work recorded by Mr. Shivalec, resulted in Defendants' shaving a total of approximately 182.3 compensable hours from Mr. Shivalec's timecards. (*Id.* at ¶ 120.)

14

**B.    Defendants Violated The FLSA And WWPCL By Automatically Deducting Thirty Minutes Of Compensable Work Time Each Workday Even Though Mr. Shivalec Did Not Take A Break Of Thirty Consecutive Minutes.**

On workdays when Defendants scheduled Mr. Shivalec to work eight (8) or more hours, Defendant Olson expected Mr. Shivalec to take a thirty (30) minute lunchbreak. (*Id.* at ¶ 71). However, Mr. Shivalec did not have a scheduled time during his workday to take a lunchbreak of thirty (30) consecutive minutes, (*id.* at ¶ 72), Defendant Olson typically did not monitor whether Mr. Shivalec took a lunchbreak of thirty (30) consecutive minutes, (*id.* at ¶ 73), and Defendants did not require Mr. Shivalec to "punch out" for lunchbreaks, (*id.* at ¶ 74), unless he left Defendants' premises. (*Id.* at ¶ 75.)

Further, and during Mr. Shivalec's employment at Defendant MMMC, Defendants did not have any written policies or procedures regarding breaks or meal periods.[3] (*Id.* at ¶ 78.) Similarly, Defendant did not have any policies or procedures, written or unwritten, that Mr. Shivalec should (or could) follow in the event that he did not take a lunchbreak of thirty (30) consecutives, took a lunchbreak less than thirty (30) consecutive minutes, or ate while performing compensable work. (*Id.* at ¶ 86.)

The record shows that during Mr. Shivalec's employment, Mr. Shivalec usually or customarily did not take a lunchbreak of thirty (30) consecutive minutes, but rather ate lunch in Defendants' "shop" while simultaneously working. (*Id.* at ¶¶ 80-81.) The record further shows that Defendant Olson periodically ate his lunch in Defendants' "shop" as well at the same time that Mr. Shivalec was eating while simultaneously working, (*id.* at ¶ 83), that Defendant Olson undisputedly was aware that Mr. Shivalec did not take a lunchbreak of thirty (30) consecutive minutes each

---

[3] Defendants' only (unwritten) rule or policy regarding breaks was that employees who smoked needed do so away from Defendants' building because of the presence of exposed fuel. (*Id.* at ¶ 79.)

workday, (*id.* at ¶ 82), and that Mr. Shivalec periodically told Defendant Olson that he had worked through lunch. (*Id.* at ¶ 84.)

Despite these facts, Defendant Olson, when handwriting Mr. Shivalec's compensable hours of work on Mr. Shivalec's timecards, automatically deducted thirty (30) minutes from Mr. Shivalec's compensable hours of work each workday he was scheduled to and did work eight (8) or more hours. (*Id.* at ¶ 88.) Thus, for example, on days when Mr. Shivalec was scheduled to work nine (9) hours, Defendant Olson handwrote "8.5" hours as the number of hours Mr. Shivalec worked for purposes of calculating Mr. Shivalec's compensable hours of work each workday, regardless of whether Mr. Shivalec actually worked more than nine (9) hours in the workday and/or took a work-free lunchbreak of at least thirty (30) consecutive minutes. (*Id.*) Defendant Olson made this same automatic deduction even when Mr. Shivalec was "punched out," but for less than thirty (30) consecutive minutes.[4] (*Id.* at ¶ 77.)

At or around the time that Mr. Shivalec received his second paycheck from Defendants (on or about December 24, 2015), Mr. Shivalec told Defendant Olson that his "hours and the check were not lining up." (*Id.* at ¶ 89.) In response, and in acknowledgement of his knowledge of his automatic deduction practice, Defendant Olson told Mr. Shivalec that it was "state law" to deduct thirty (30) minutes each workday that he (Mr. Shivalec) works eight (8) or more hours. (*Id.*)

These facts demonstrate that Defendants' practice of automatically deducting thirty (30) minutes of compensable time violates the FLSA and WWPCL in two (2) fashions: (1) by failing to compensate Mr. Shivalec for all hours Defendants suffered or permitted him to work; and

---

[4] Mr. Shivalec's timecards demonstrate that he was "punched out" for less than thirty (30) consecutive minutes on seventeen (17) of the fifty-one (51) occasions upon which he "punched out" and "punched back in" during his workday. (*Id.* at ¶ 122.)

(2) by failing to compensate Mr. Shivalec for breaks that are otherwise compensable under the FLSA and/or WWPCL.

### 1.    Defendants failed to compensate Mr. Shivalec for all hours they suffered or permitted him to work.

The FLSA and WWPCL provide that all time employers suffer or permit an employee to work must be compensated. *See* 29 U.S.C. §§ 206(a), 207(a); Wis. Stat. §§ 109.01(3), 109.03(1). "Work not requested but suffered or permitted is work time … The reason is immaterial." 29 C.F.R. § 785.11. "The FLSA imposes an obligation on the employer 'to exercise its control and see that the work is not performed if it does not want it to be performed.'" *Kellar*, 664 F.3d at 177 (citing 29 C.F.R. § 785.13); *see also Allen*, 865 F.3d at 938 ("If the employer does not want to pay overtime, its management must exercise its control and see that the work is not performed."). "The employer's duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Kellar*, 664 F.3d at 177 (internal citation omitted).

An employer's knowledge can be actual or constructive, *Allen*, 865 F.3d at 938, and that knowledge need not arise concurrently. *Chao,* 514 F.3d at 287. An "employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business. An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision." *Reich,* 28 F.3d at 1082 (internal citations omitted). "In reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* were such that the employer had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." *Id.* (emphasis in original) (internal citations omitted); *see also Allen*, 865 F.3d at 938 ("An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence.").

17

Here, the record before the Court demonstrates that Defendant Olson had actual knowledge that Mr. Shivalec did not take a lunchbreak of at least thirty (30) consecutive minutes each workday and that he, himself, occasionally ate his lunch in the "shop" with Mr. Shivalec and while Mr. Shivalec was simultaneously eating and working. (PPFOF, ¶¶ 82-84.) The record also shows that Defendant Olson had constructive knowledge that Mr. Shivalec was not taking lunchbreaks of at least thirty (30) consecutive minutes. Indeed, the record shows that on or about December 24, 2015, in the first month of his almost seventeen (17) months of employment,[5] Mr. Shivalec raised his concerns to Defendant Olson that his "hours and the check were not lining up," to which Defendant Olson responded that it was "state law" to deduct thirty (30) minutes each workday that he (Mr. Shivalec) works eight (8) or more hours. (*Id.* at ¶ 89.) Further, and although Defendants did not have any policies or procedures for Mr. Shivalec to report occasions when he did not take a lunchbreak of thirty (30) consecutive minutes, *Mr. Shivalec explicitly told Defendant Olson that he worked through his lunch* approximately twice each month, on average, during his employment. (*Id.* at ¶¶ 78, 84, 86.)

For such reasons, Defendants' failure to compensate Mr. Shivalec for all hours worked by virtue of automatically deducting thirty (30) minutes of compensable time each workday when Mr. Shivalec worked eight (8) or more hours violated the FLSA and WWPCL. *See Kellar*, 664 F.3d at 177; *see also Dominguez*, 790 F. Supp. 2d at 816.

**2.      Defendants failed to compensate Mr. Shivalec for breaks that are otherwise compensable under the WWPCL.**

The WWPCL differentiates between compensable breaks and "meal periods." Pursuant to WIS. ADMIN. CODE § DWD 274.02(3), "The employer *shall* pay all employees for on-duty meal

---

[5] *See id.* at ¶ 8

Case 2:17-cv-01245-WED   Filed 08/24/18   Page 18 of 27   Document 28

periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work." (emphasis added).

Here and in addition to Defendants' failure to compensate Mr. Shivalec for all hours of compensable work by virtue of automatically deducting thirty (30) minutes of compensable work each workday for a lunchbreak, Defendants made this same deduction on occasions when Mr. Shivalec "punched out" during the workday and for less than thirty (30) consecutive minutes. (PPFOF, ¶ 77.) The record demonstrates Mr. Shivalec "punched out" for less than thirty (30) consecutive minutes on seventeen (17) occasions during his employment. (*Id.* at ¶ 122.)

Pursuant to the WWPCL, these "breaks" were compensable because Defendants demonstrably did not afford Mr. Shivalec a work-free break at least thirty (30) consecutive minutes on such occasions. *See* WIS. ADMIN. CODE § DWD 274.02(3). Thus, Defendants were legally obligated to compensate Mr. Shivalec for these breaks and violated the WWPCL when they failed to do so. *See id.*

>   **C.** **Defendants Unlawfully Deducted Compensable Hours From Mr. Shivalec, The Value Of Which Exceeded Any Amounts To Be Reimbursed, As A Result Of Its Failure To Compensate Mr. Shivalec Time And One-Half For All Hours Worked In Excess Of Forty In A Workweek.**

29 U.S.C. § 207(a)(1) states, in part: "[N]o employer shall employ any of his employees…for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Similarly, Wis. Admin. Code § DWD 274.03 states, in part: "each employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week."

Here and setting aside the number of overtime hours Mr. Shivalec actually worked as reflected by his punches and rather than his scheduled shifts as calculated by Defendant Olson, it

19

is undisputed that subsequent to increasing Mr. Shivalec's hourly rate to $22.00 beginning the workweek of February 16, 2016, Defendants and Mr. Shivalec agreed that Defendants would compensate him at an overtime rate of $28.00 per hour for all hours worked in excess of forty (40) in a workweek, rather than time and one-half, or $33.00 per hour. (PPFOF, ¶ 100.) This agreement facially conflicts with the FLSA and WWPCL and, therefore, fails to shield Defendants from liability for its failure to comply with those laws. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 703-07 (1945) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."); *see also Barrentine v. Arkansas-Best Freight Sys., Inc*., 450 U.S. 728, 740 (1981); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-116 (1946); *Walling v. Helmerich & Payne, Inc*., 323 U.S. 37, 42 (1944). This is true even though Mr. Shivalec consented to the lesser rate. *See Howard v. City of Springfield, Illinois*, 274 F.3d 1141, 1148 (7th Cir. 2001); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993); *see also* 29 C.F.R. § 778.106.

Plaintiff's "losses" resulting from Defendants' unlawful use of an overtime rate less than time and one-half resulted from Defendants' "time trading" system, whereby Defendant Olson purchased personal items for Mr. Shivalec through Defendant MMMC and then took reimbursement for the same by deducting compensable hours of work from Mr. Shivalec equivalent to the cost of the personal items. (PPFOF, ¶¶ 92-94.) Defendants then did not compensate Mr. Shivalec for the hours that were deducted. (*Id.* at ¶ 94.)

On occasions when Defendants deducted compensable overtime hours from Mr. Shivalec for purposes of reimbursing Defendant MMMC for purchases of personal items, Defendants used their unlawful overtime rate of $28.00 per hour, rather than one and one-half times Mr. Shivalec's regular hourly rate of $22.00, or $33.00 per hour. (*Id.* at ¶ 100.) As a result, Defendants frequently

20

miscalculated the deductions, deducting and not compensating Mr. Shivalec for overtime hours equating to a value greater than the amount to be reimbursed. (*Id.* at ¶¶ 101-112.) The record before the Court demonstrates that Defendants made such unlawful deductions on eleven (11) occasions. (*See id.* at ¶¶ 102-112.)

As an example, in the bi-weekly pay period ending April 9, 2016, Defendant Olson deducted 2.5 hours of compensable overtime from Mr. Shivalec (equating to $82.50 at the legally-correct overtime rate of $33.00 per hour) to reimburse Defendant MMMC for an $80.00 "carb tuner." (*Id.* at ¶ 102.) Similarly, in the bi-weekly pay period ending May 21, 2016, Defendant Olson deducted 10.5 hours of compensable overtime from Mr. Shivalec (equating to $346.50 at the legally-correct overtime rate of $33.00) to reimburse Defendant MMMC for $143.00 in purchases, additionally paying Mr. Shivalec $155.00 in cash, for a total of $298.00. (*Id.* at ¶ 104.)

In short, it is undisputed that Defendants unlawfully compensated Mr. Shivalec at an unlawful overtime rate for all hours worked in excess of forty (40) in the workweek, resulting in Defendants further unlawfully deducting compensable hours in excess of any personal items to be reimbursed, in violation of the FLSA and WWPCL.

**D.      Based On Defendant Olson's Calculations Of Mr. Shivalec's Compensable Hours, Defendants Failed To Compensate Mr. Shivalec At An Overtime Rate Of Pay For All Hours Worked In Excess Of Forty In A Workweek.**

Setting aside the number of compensable hours Mr. Shivalec actually worked as reflected by his punches, the record before the Court demonstrates that, even accepting Defendant Olson's calculations of compensable hours as true, Defendants failed to compensate Mr. Shivalec at an overtime rate of pay for all hours worked in excess of forty (40) in a workweek. For example, in the bi-weekly pay period ending September 24, 2016, Defendant Olson's handwritten hours on Mr. Shivalec's timecard totaled 34.5 hours in the workweek ending September 16, 2016, and 40.5

21

hours in the workweek ending September 24, 2016. (*Id.* at ¶ 114.) For the pay period, Defendants compensated Mr. Shivalec for 75.00 hours, but did not compensate Mr. Shivalec with any overtime. (*Id.*) Similarly, in the bi-weekly pay period ending October 8, 2016, Defendant Olson's handwritten hours on Mr. Shivalec's timecard totaled 28 hours in the workweek ending October 2, 2016, and 43.5 hours in the workweek ending October 8, 2016. (*Id.* at ¶ 116.) For the pay period, Defendants compensated Mr. Shivalec for 71.5 hours, did not compensate Mr. Shivalec with any overtime. (*Id.*)

Relatedly, in the bi-weekly pay period ending February 11, 2017, Defendant Olson simply miscalculated the total of his (Defendant Olson's) handwritten hours for Mr. Shivalec's workweek ending February 11, 2017. (*Id.* at ¶ 117.) Defendant Olson's calculated total for that workweek was forty (40) hours, rather than forty-one (41) hours. (*Id.*) As a result, Defendants did not compensate Mr. Shivalec for this miscalculated hour of overtime. (*Id.*)

The record shows that Defendants unlawfully failed to pay overtime in such fashions on six (6) occasions. (*See id.* at ¶¶ 114-119.) These failures are blatant violations of the FLSA and WWPCL's mandate that Defendants compensate Mr. Shivalec at an overtime rate of pay for all hours worked in excess of forty (40) in a workweek. *See* 29 U.S.C. § 207(a)(1); WIS. ADMIN. CODE e § DWD 274.03.

### III.    MR. SHIVALEC IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE FLSA

Employers who violate the FLSA "*shall* be liable to the ... employees affected in the amount of their ... unpaid overtime compensation [and] additional equal amount as liquidated damages …" 29 U.S.C. § 216(b) (emphasis added). However, if an employer's violation of the FLSA was in good faith *and* reasonable, it will not be liable for liquidated damages under the FLSA. *See* 29 U.S.C. § 260. Employers bear the burden of proving both good faith and reasonable

22

belief,[6] which is an objective standard under the FLSA. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303. 312 (7th Cir. 1986).

An employer's burden of proof to avoid liquidated damages is substantial. *Bankston,* 60 F.3d at 1254. Under the FLSA, there is a strong presumption in favor of awarding liquidated damages because they are an ordinary remedy under the FLSA. *See, e.g., Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 (7th Cir. 2010); *Uphoff*, 176 F.3d at 405; *Walton,* 786 F. 2d at 310; *Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 321-22 (N.D. Ill. 1995).

These damages are neither meant to punish an employer, 29 C.F.R. § 790.22, nor are they "some disfavored 'penalty.'" *Walton,* 786 F.2d at 310. Rather, they are meant to make employees whole for wages not paid on time. 29 C.F.R. § 790.22. The Seventh Circuit has confirmed this tenant in FLSA cases: "Doubling is the norm, not the exception." *Uphoff*, 176 F.3d at 405; *Shea,* 152 F.3d at 733; *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1223 (7th Cir. 1995).

An employer's "subjective beliefs do not amount to proof of good faith unless they were reasonable," *Bankston*, 60 F.3d at 1255, and "[a] good heart but an empty head does not produce a defense." *Walton,* 786 F.2d at 312. When an employer fails to take measurable steps towards determining whether it is complying with the responsibilities imposed by the FLSA, a lack of good faith is established. *Bankston*, 60 F.3d at 1255; *see also* 29 C.F.R. § 790.15; *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1072 (9th Cir. 1990), *cert. denied,* 498 U.S. 1086 (1991) (noting that, in order to establish good faith, a defendant must "prove that it had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it.").

Similarly, for an employer to establish it had objectively reasonable grounds for believing its actions did not violate the FLSA, it must establish that it took affirmative steps to determine its

---

[6] *Uphoff v. Elegant Bath, Ltd*., 176 F.3d 399, 404-05 (7th Cir. 1999); *Shea v. Galaxie Lumber & Constr. Co.,* 152 F.3d 729, 733 (7th Cir. 1998) (citing *Bankston v. State of Ill.,* 60 F.3d 1249, 1254 (7th Cir. 1995)).

FLSA requirements but, nevertheless, violated the FLSA. *Dominici*, 881 F. Supp. at 321-22; *Pautlitz v. City of Naperville,* 874 F. Supp. 833, 834–35 (N.D. Ill. 1994); *Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F. Supp. 860, 871 (S.D.N.Y. 1984) (stating, "ignorance is no defense to a claim for liquidated damages...").

In evaluating the "reasonableness" of an employer's belief that its "act or omission" was not a violation of the FLSA, a court first identifies the "act or omission" at issue and then, secondarily, what the employer believed about its acts or omissions, and why. *Bankston*, 60 F.3d at 1255.

The record before the Court in this case shows that, among other things, Defendant Olson: (1) established and determined that Mr. Shivalec compensated on an hourly basis, (*id.* at ¶ 20); (2) established and determined Mr. Shivalec's hourly rates of pay, (*id.* at ¶ 21); (3) established and determined Mr. Shivalec's work schedule and hours of work, (*id.* at ¶ 27); (4) determined Mr. Shivalec's hours of compensable work, (*id.* at ¶ 54); (5) determined Mr. Shivalec's bi-weekly compensation, (*id.* at ¶ 51); and, (6) was responsible for conducting payroll for Defendants' employees, including Mr. Shivalec. (*Id.* at ¶ 38.) Despite such immense responsibilities regarding the compensation of Defendants' employees, including Mr. Shivalec, Defendant Olson did nothing to ensure compliance with federal or state laws regarding compensation, with the exception of reviewing a poster on the wall at Defendant MMMC. (*Id.* at ¶ 34.) Further, he never consulted with anyone regarding proper compensation of Defendants' employees, including Mr. Shivalec. (*Id.*)

Further, Defendant Olson's stated justification for not taking any action to stop or prevent Mr. Shivalec from performing compensable work outside of his schedule shift hours, his presumption that Mr. Shivalec did not any work overtime unless he specifically asked him to, and his failure to instruct Mr. Shivalec what to do in the event he did not take a work-free lunchbreak

of thirty (30) consecutive minutes was based on nothing more than the fact that Mr. Shivalec "is an adult." (*Id.* at ¶¶ 70, 87.)

In other words, the Defendants' multiple violations of the FLSA outlined herein were not reasonable *and* were not engaged-in in good faith. Accordingly, Mr. Shivalec is entitled to liquidated damages in an additional amount equal to his unpaid overtime. 29 U.S.C. § 216(b)

## IV. MR. SHIVALEC IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE WWPCL

WIS. STAT. § 109.11(2)(a) states that if an individual bypasses the Department of Workforce Development complaint process and pursues his claims for unpaid wages directly in court, a "court may order the employer to pay the employee, in addition to the amount of wages due and unpaid … increased wages of not more than 50 percent of the amount of wages due and unpaid." Thus, unlike the imperative presented by the FLSA in relation to unpaid overtime compensation, this Court has the discretion to award liquidated damages to Mr. Shivalec on any unpaid, non-overtime wages. *See Johnson v. Roma II-Waterford LLC*, 2013 WI App 38, ¶¶ 43-44; *see also Hubbard v. Messer,* 2003 WI 145, ¶ 22.

The small amount of case law on the topic suggests that the Court should exercise its discretion to award liquidated damages under the WWPCL when the employer's failure to pay the wages "was dilatory or otherwise unjust," *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wisconsin, S.C.*, 2005 WI App 2017, ¶ 58, and not simply "the result of an honest misunderstanding, a mistake, or a reasonable dispute." *Hubbard*, 2003 WI 145 at ¶ 40.

Here, nothing in the record even hints that Defendants' failures to lawfully compensate Mr. Shivalec were or could have been "the result of an honest misunderstanding, a mistake, or a reasonable dispute." *Id.* Rather, the record before the Court demonstrates that Defendants' unlawful conduct was willful and in wanton disregard for the WWPCL. Indeed, the record is clear that, in determining Mr.

Shivalec's compensable hours of work and, consequently, his compensation, Defendant Olson intentionally disregarded Mr. Shivalec's hours of work as he recorded them and calculated Mr. Shivalec's hours of work and compensation based purely on his scheduled hours of work. (PPFOF, ¶¶ 51, 54-59.) Further, the record is clear that Defendant Olson failed to take any actions to determine whether his compensation practices complied with the law. (*Id.* at ¶ 34.)

For such reasons, this Court should exercise its discretion to award liquidated damages to Mr. Shivalec for all unpaid, non-overtime hours owed to him by Defendants as a result of its violations of the WWPCL, in an amount equal to fifty percent (50%) of all such compensation owed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Mr. Shivalec is entitled to judgment as a matter of law because there are no genuine disputes as to any material fact and no rational, reasonable jury could return a verdict in favor of Defendants. The record before the Court makes plain that Defendants violated the FLSA and WWPCL by failing to compensate Mr. Shivalec for all hours they suffered or permitted him to work, including at an overtime rate of pay for all hours worked in excess of forty (40) in a workweek. The record further demonstrates that liquidated damages are appropriate in an amount equal to all overtime compensation owed, pursuant to the FLSA, and in an amount equal to fifty percent (50%) of all non-overtime compensation owed, pursuant to the WWPCL.

Dated this 24th day of August, 2018.

WALCHESKE & LUZI, LLC
Counsel for the Plaintiff

 s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
15850 West Bluemound Road, Suite 304

26

Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com

Case 2:17-cv-01245-WED   Filed 08/24/18   Page 27 of 27   Document 28