UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

STEVEN E. SHIVALEC

        Plaintiff,

    v.                                        Case No. 17-CV-1245

MILWAUKEE MIXED METAL CYCLES LLC, *et al.*

        Defendants.

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## <u>INTRODUCTION</u>

       This Court should deny Defendants' Motion for Summary Judgment ("Defendants' Motion") and grant Plaintiff's Motion for Summary Judgment, ECF No. 27, because, given the evidentiary record before the Court, a reasonable and rational jury would conclude that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Wisconsin Wage Payment and Collection Laws ("WWPCL"), by failing to compensate Mr. Shivalec for all hours Defendants suffered or permitted him to work, including at an overtime rate of pay for all hours worked in excess of forty (40) hours in a workweek. Indeed, Defendants' Motion is premised on the notion that Mr. Shivalec cannot establish damages,[1] indicating that they are aware and concede that they violated the FLSA and WWPCL. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 688 (1946). However,

---

[1] In their Memorandum of Law in Support of Defendants' Rule 56 Motion to for [sic] Summary Judgment, ECF No. 38 (hereinafter, "Defendants' Brief"), Defendants state that Mr. Shivalec's "complaint must be dismissed as a matter of law because he cannot establish damages beyond speculation," (Defendants' Brief, ECF No. 38 ("Def. Br."), p. 3), and "he cannot prove his damages and his claims for unpaid wages must be dismissed." (*Id.* at p. 29.)

as discussed herein, not only is Defendants' liability under relevant law patently clear, but also Mr. Shivalec's damages are readily ascertainable and have already been calculated with exactness.

This Court should also award Mr. Shivalec his reasonable attorneys' fees for having to respond to Defendants' Motion because Defendants blatantly: (1) misrepresented the record to the Court[2]; (2) fabricated "facts"[3]; (3) made statements unsupported by the record[4]; (4) baselessly disparaged Mr. Shivalec[5]; and (5) misrepresented existing case law.[6]

---

[2] For example, Defendants' Proposed Statement of Facts ("PSOF") states: "Shivalec often worked on his personal motorcycles and machines, as well as other personal business, and he did not punch out when he engaging [sic] in personal business on the premises." (Defendants' Proposed Statement of Facts, ECF No. 32 ("DPSOF"), ¶ 92.) In support, Defendants' cite solely Ronald Olson's (non-factual) "belief" that Shivalec did this, (Declaration of Ronald Olson, ECF No. 34 ("Olson Decl."), ¶ 9), intentionally omitting Mr. Shivalec's deposition testimony stating the opposite. (Plaintiff's Proposed Findings of Fact in Opposition to Defendants' Motion for Summary Judgment Pursuant to Rule 56 ("PPFOF"), ¶¶ 85-87.)

As another example, Defendants' PSOF states: "Shivalec was paid goods in exchange for services and was credited for his regular rate for hours less than 40, and was credited for an overtime rate that equaled or exceeded time and a half for hours over 40." (DPSOF, ¶ 133.) However, there is no dispute that Defendants "credited" Mr. Shivalec with an overtime rate of $28.00, $5.00 less than his lawful overtime rate of $33.00. (PPFOF, ¶¶ 94-95.)

[3] For example, Defendants state: "There can be no dispute that Milwaukee Cycles['] process of allowing Shivalec to verify that his pay was accurate by comparing his time cards against his own records of his hours was a reasonable process for Shivalec to report any unpaid time." (Def. Br., p. 20.) Defendants do not cite to its PSOF in support of this "indisputable" process. Further, the undisputed evidence in the record is that Defendants did not have a "process" for reviewing time or reporting unpaid time. (PPFOF, ¶¶ 42, 50, 52-53, 71-72.)

Similarly, Defendants state, "Shivalec continually verified that his pay was accurate and his employer accepted Shivalec's review of his paychecks." (Def. Br., p. 20.) Again, Defendants do not cite its PSOF in support of this statement and the record is devoid of any evidence to this effect.

Also, Defendants state, "He alleges that he did not tell his employer he worked through his lunch because he 'did not know he was supposed to be paid for it' until after he left Milwaukee Cycles. (Id. at p. 18.) Again, Defendants do not cite its PSOF in support of this statement, despite brazenly stating that Mr. Shivalec "alleged" the same. Further, Defendants' falsely-attributed statement also conflicts with evidence in the record demonstrating that Mr. Shivalec did tell Olson that he worked through his lunch. (DPSOF, ¶ 86; PPFOF, ¶ 69.)

[4] For example, Defendants state that "Shivalec never advised Olson that he was unable to take a 30 minute break." (Def. Br., p. 10.) In support, Defendants cite PSOF ¶ 86, which states, in part: "Shivalec advised told [sic] Olson that he was unable to take a 30 minute break," (DPSOF, ¶ 86), which comports with the record. (PPFOF, ¶ 69.)

As another example, Defendants state that "Shivalec was not performing compensable work during these calls and did not punch out when he made personal calls." (Def. Br., p. 12.) Defendants cite PSOF ¶ 101 in support, (id.), which does not mention whether he was performing compensable work at such times. (DPSOF, ¶ 101.) Further, evidence in the record demonstrates Mr. Shivalec customarily used his speakerphone function to work while on the phone. (PPFOF, ¶ 84.)

[5] For example, Defendants' continual and completely unnecessary references to Mr. Shivalec's child support that are not even factually correct. (E.g., Def. Br., pp. 2, 14, 17.) Mr. Shivalec's child support obligations are for a court-ordered, set amount, and are not income-based. (PPFOF, ¶ 7.)

[6] In Defendants' Brief, Defendants cite to Blakes v. Illinois Bell Tel. Co., 77 F.Supp.3d 776, 783 (N.D. Ill. 2015) in support of the proposition that "[s]imply reviewing Shivalec's time cards would not alert his employer to any unpaid time because Shivalec never punched out on the time cards for his breaks," (Def. Br., pp. 20-21), representing that the Blakes court held that "employee's claim that his employer had actual knowledge that the employee was working through lunch without compensation based on employer's review of his time sheets was insufficient to survive

2

For all such reasons, Defendants' Motion is an abuse of process that should not only be denied, but also sanctioned. Further, this Court should grant Plaintiff's Motion for Summary Judgment, ECF No. 27.

## STATEMENT OF FACTS

Mr. Shivalec fully incorporates herein Plaintiff's Proposed Findings of Fact in Opposition to Defendants' Motion for Summary Judgment Pursuant to Rule 56 ("PPFOF") and Plaintiff's Responses to Defendants' Proposed Statement of Facts ("Pl. Resp. DPSOF"), both of which have been filed with the Court. Below is a summary of the facts of this case.

Defendant Ronald Olson ("Defendant Olson") is and was the Owner of Defendant Milwaukee Mixed Metal Cycles LLC ("Defendant MMMC") during Mr. Shivalec's employment at Defendant MMMC. (PPFOF, ¶ 1.) In Defendants' Brief, Defendants did not dispute that they are covered "employers" for purposes of or that they are subject to the FLSA and WWPCL. Further, they did not dispute that they are joint and severally liable for their violations of the FLSA and WWPCL as set forth herein and in Plaintiff's Motion for Summary Judgment, ECF No. 27.

Defendants employed Mr. Shivalec as a Motorcycle Mechanic from December 1, 2015, through August 26, 2017. (*Id.* at ¶ 2.) As a Motorcycle Mechanic, Mr. Shivalec's job duties included diagnosing and repairing motorcycles, (Pl. Resp. DPSOF, ¶ 38), in Defendant MMMC's "shop," located in the basement of its physical location. (*Id.* at ¶ 41.)

In his position as Motorcycle Mechanic, Mr. Shivalec reported directly to Defendant Olson, (PPFOF, ¶ 4), and performed compensable work at the direction and with the knowledge of Defendant Olson. (*Id.* at ¶ 11.) During Mr. Shivalec's employment at Defendant MMMC, Defendant Olson:

---

summary judgment because the claim that they 'presumably should have noticed that he did not report any overtime' was speculative." (*Id.* at pp. 20-21.) This quote does not appear in this decision. Further, the *Blakes* decision concerned whether completing electronic timecards post-shift was a compensable activity. *See Blakes*, 77 F.Supp.3d at 782-83.

3

established and determined that Mr. Shivalec be compensated on an hourly basis, (*id.* at ¶ 9); established and determined Mr. Shivalec's hourly rates of pay, (*id.* at ¶ 10); directed the work that Mr. Shivalec was to perform via Defendants' "job board,"[7] (*id.* at ¶ 12); tracked the length of time it took Mr. Shivalec to complete each work order and compared the same against the number of hours he estimated for completion of the work order, (*id.* at ¶ 13); established and determined Mr. Shivalec's work schedule and hours of work, (*id.* at ¶ 15); established the work rules, policies, and procedures by which Mr. Shivalec abided in the workplace, (*id.* at ¶ 16); controlled the terms and conditions of Mr. Shivalec's employment, (*id.* at ¶ 17); maintained the ability to hire, fire, and discipline Mr. Shivalec, (*id.* at ¶¶ 8, 55); and monitored and reviewed Mr. Shivalec's work performance. (Pl. Resp. DPSOF, ¶ 49; PPFOF, ¶ 18.)

During Mr. Shivalec's employment at Defendant MMMC, his usual or customary weekly work schedule was Tuesdays through Fridays, from 9:00 a.m. to 6:00 p.m., and Saturdays, from 9:00 a.m. to 3:00 p.m. (Pl. Resp. DPSOF, ¶ 4; PPFOF, ¶ 19.) In the event he arrived to work earlier or stayed later than Defendant Olson, Defendants provided Mr. Shivalec keys to open or lock-up Defendant MMMC. (PPFOF, ¶ 3.)

Defendant Olson's expectation was that Mr. Shivalec would take a thirty (30) minute lunchbreak each workday he was scheduled to work eight (8) or more hours. (Pl. Resp. DPSOF, ¶ 4; PPFOF, ¶ 56.) However, Defendant Olson did not communicate that expectation to Mr. Shivalec, (PPFOF, ¶ 57), Mr. Shivalec did not have a scheduled time during his workday to take a thirty (30) minute lunchbreak, (Pl. Resp. DPSOF, ¶ 17), Defendant Olson typically did not monitor whether Mr. Shivalec took a thirty (30) minute lunchbreak, (Pl. Resp. DPSOF, ¶ 17), and Defendants did not

---

[7] Defendants' "job board" was a metal file board that contained Defendants' work orders in order of priority. (*Id.* at ¶ 12.) Work orders on top were "top priority," while work orders on the bottom were "lowest priority." (*Id.*) Defendant Olson was kept apprised of the work Mr. Shivalec performed vis-à-vis the "job board" because any work orders he completed were filed in the bottom slot of the board. (*Id.* at ¶ 14.)

4

require Mr. Shivalec to "punch out" for "breaks," meal periods, or any other activities during his workday, unless he left Defendants' premises for personal reasons. (Pl. Resp. DPSOF, ¶¶ 16, 20, 54, 88.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants compensated Mr. Shivalec on an hourly basis with an hourly rate of pay. (Pl. Resp. DPSOF, ¶ 40.) At the outset of his employment, Defendants compensated Mr. Shivalec with an hourly rate of $18.00 per hour. (Pl. Resp. DPSOF, ¶ 37.) Beginning Tuesday, February 16, 2016, Defendants increased Mr. Shivalec's hourly rate to $22.00 per hour. (PPFOF, ¶ 5.) As of his last day of employment on August 26, 2017, Mr. Shivalec's hourly rate remained $22.00 per hour. (*Id.* at ¶ 6.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants did not have, and Mr. Shivalec was not subject to, any written employment policies, procedures, or work rules. (*Id.* at ¶ 20.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants utilized a physical, mechanical punch clock and timecards for purposes of recording Mr. Shivalec's hours worked. (*Id.* at ¶ 25.) Defendants did not utilize any other system for tracking or recording his hours. (*Id.* at ¶ 26.)

While Mr. Shivalec primarily worked in the basement of Defendant MMMC, (Pl. Resp. DPSOF, ¶ 41), Defendant Olson primarily worked on the first floor. (Pl. Resp. DPSOF, ¶ 6.) However, Defendant Olson frequently physically came and went through Defendants' basement – or the "shop" as it was called – to ensure compensable work was being performed, (*id.* at ¶ 22), monitored that Mr. Shivalec was performing work, (*id.* at ¶ 18), and demonstrated his knowledge of when compensable work was being performed, even when he was not necessarily watching. (*Id.* at ¶¶ 13-14, 23.) That said, Defendant Olson could not *constantly* monitor whether Mr. Shivalec was performing compensable work. (*Id.* at ¶ 33.) Accordingly, Defendants operated an "honor system" with respect to the hours of work recorded by Mr. Shivalec each work day, (*id.; see* Pl. Resp. DPSOF, ¶ 18), and

5

expected Mr. Shivalec to record his hours of work accurately using its punch clock and timecard system. (PPFOF, ¶ 29.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants compensated Mr. Shivalec on a bi-weekly basis for the immediately prior two (2) workweeks of work performed, (*id.* at ¶ 36), customarily paying him via physical paycheck, (Pl. Resp. DPSOF, ¶¶ 121, 131, 137), on the Friday following the two (2) workweeks comprising the bi-weekly pay period. (*Id.* at ¶ 23.) Defendants' stated workweek for compensation purposes was Monday through Saturday, (PPFOF, ¶ 27), and Defendant Olson handled Defendants' payroll. (*Id.* at ¶ 24.) As part of Defendants' payroll process, Defendant Olson determined Mr. Shivalec's compensable hours of work, (*id.* at ¶ 39), and the amount of compensation Mr. Shivalec received. (*Id.* at ¶ 37.)

Each workweek, Mr. Shivalec used a new timecard to record his compensable hours of work each workday by "punching in" on his timecard at the start of his shift and prior to performing compensable work, and "punching out" at the end of his shift and subsequent to performing compensable work. (*Id.* at ¶¶ 28, 31.) Each workday, Mr. Shivalec recorded his hours of work accurately using Defendants' punch clock and timecard system, (*id.* at ¶ 30), and performed compensable work immediately after "punching in" and before "punching out." (*Id.* at ¶ 32.) Thus, during Mr. Shivalec's employment at Defendant MMMC, Mr. Shivalec's mechanical punches via Defendants' punch clock system corresponded to his actual hours worked. (*Id.* at ¶¶ 31-32, 43.)

After "punching in" or "punching out," Mr. Shivalec placed his timecard in his designated slot in a timecard rack next to the punch clock. (*Id.* at ¶ 35). Then, on the Wednesday or Thursday preceding the Friday upon which Defendants compensated Mr. Shivalec, Defendant Olson collected Mr. Shivalec's timecards for his immediately prior (2) workweeks for purposes of conducting payroll. (*Id.* at ¶ 38.)

6

Subsequent to collecting Mr. Shivalec's timecards, Defendant Olson determined Mr. Shivalec's compensable hours of work each workday and handwrote them on Mr. Shivalec's timecards. (*Id.* at ¶ 39.) Defendant Olson based this determination on Mr. Shivalec's scheduled hours of work, rather than the number of hours Mr. Shivalec recorded via mechanical punch. (*Id.* at ¶¶ 40, 44-45.) In basing this determination on Mr. Shivalec's scheduled hours of work, Defendant Olson further automatically deducted thirty (30) minutes of work time from each of Mr. Shivalec's workdays in which he was scheduled to and did work more than eight (8) hours, regardless of whether Mr. Shivalec took a lunchbreak of or "punched out" for at least thirty (30) consecutive minutes. (*Id.* at ¶¶ 61, 73.) Thus, for example, on days when Mr. Shivalec was scheduled to work nine (9) hours, Defendant Olson handwrote "8.5" hours as the number of hours Mr. Shivalec worked for purposes of calculating Mr. Shivalec's compensable hours of work that workday, regardless of whether Mr. Shivalec actually worked more than nine (9) hours in the workday and/or took a work-free lunchbreak of at least thirty (30) consecutive minutes. (*Id.* at ¶ 73.) Defendants then compensated Mr. Shivalec based on the total number of compensable hours handwritten by Defendant Olson, (*id.* at ¶ 41), rather than the actual hours of work recorded by Mr. Shivalec each workweek. (*Id.* at ¶¶ 44-47.)

Defendant Olson took these automatic deductions although: (1) Mr. Shivalec usually or customarily did not take a lunchbreak of thirty (30) consecutive minutes, but rather ate lunch in Defendants' "shop" while simultaneously working, (*id.* at ¶¶ 64-65); (2) Defendant Olson periodically ate his lunch in Defendants' "shop" as well at the same time that Mr. Shivalec was eating while simultaneously working, (*id.* at ¶ 67); (3) Defendant Olson undisputedly was aware that Mr. Shivalec did not take a lunchbreak of thirty (30) consecutive minutes each workday, (Pl. Resp. DPSOF, ¶ 86; PPFOF, ¶ 66); (4) Mr. Shivalec periodically told Defendant Olson that he had worked through lunch, (Pl. Resp. DPSOF, ¶ 86; PPFOF, ¶ 69); and (5) Defendant Olson was otherwise in Defendants' "shop"

7

while he and other employees were simultaneously eating their lunches while working. (*Id.* at ¶ 68.) According to Defendants, this deduction was justified by Defendant Olson's subjective belief that "breaks" or otherwise non-compensable activities Mr. Shivalec periodically engaged-in throughout his workday totaled approximately thirty (30) minutes. (Pl. Resp. DPSOF, ¶ 85.)

As a result of these unlawful timekeeping and payroll practices, Defendants miscalculated Mr. Shivalec's compensable hours of work almost every workweek, (PPFOF, ¶ 46), and failed to compensate him for all hours they suffered or permitted him to work. (*Id.* at ¶ 47.)

At the same time, and during Mr. Shivalec's period of employment, Defendants did not have any policies or procedures, written or unwritten: regarding compensation, recording hours worked, or overtime, (*id.* at ¶¶ 20, 53); regarding review or approval of hours worked, (*id.* at ¶¶ 20, 42); regarding breaks or meal/lunch periods, (*id.* at ¶¶ 20, 62); that Mr. Shivalec was to follow (or could follow) in the event that he did not take a duty-free lunchbreak of at least thirty (30) consecutive minutes, took a duty-free lunchbreak less than thirty (30) consecutive minutes in duration, or ate while performing compensable work,[8] (*id.* at ¶¶ 20, 71); or that Mr. Shivalec was to follow (or could follow) in the event that he believed his compensation or compensable hours as recorded by Defendants were incorrect or inaccurate. (*Id.* at ¶¶ 20, 50-52.) Similarly, Defendant Olson did not tell Mr. Shivalec what to do in such events, for the stated reason that Mr. Shivalec "is an adult." (*Id.* at ¶¶ 51, 72.)

At or around the time that Mr. Shivalec received his second paycheck from Defendants, Mr. Shivalec noticed a discrepancy between his recollection of the hours he had worked and the hours for which Defendants compensated him. (*Id.* at ¶ 74.) Accordingly, he confronted Defendant Olson regarding the same, who then told Mr. Shivalec that it was "state law" for him to deduct thirty (30) minutes from each workday upon which he worked at least eight (8) hours. (*Id.*) Mr. Shivalec, who

---

[8] Mr. Shivalec usually or customarily at while working and, thus, did not take a lunchbreak of at least thirty (30) consecutive minutes. (*Id.* at ¶¶ 64-65.)

is not from and had never lived or worked in Wisconsin, thought such a requirement was "weird," but accepted and trusted Defendant Olson's explanation. (*Id.* at ¶ 75.)

During Mr. Shivalec's employment at Defendant MMMC, Mr. Shivalec periodically made handwritten notes or otherwise tried to mentally track his hours worked. (Pl. Resp. DPSOF, ¶¶ 118, 122.) His handwritten notes were simply a secondary record of his punches as recorded on his weekly timecards. (PPFOF, ¶ 81.) Mr. Shivalec kept these notes in his truck and disposed of them either after the relevant pay period or whenever he cleaned-out his truck. (*Id.* at ¶ 82.)

During his employment at Defendant MMMC, Mr. Shivalec compared his handwritten notes or mental recollection of his hours worked against his hours of work as reflected on his paystubs, but did not do so with any measure of exactness or specificity. (Pl. Resp. DPSOF, ¶ 118; PPFOF, ¶ 76.) Rather, he roughly compared the two (2) and, unless there was a significant discrepancy (such as three (3) to four (4) hours), he did not discuss any discrepancies with Defendant Olson, but rather just assumed any differences were the result of Defendant Olson's automatic thirty (30) minute deduction. (PPFOF, ¶¶ 77, 80.) On the two (2) to three (3) occasions that Mr. Shivalec noted a significant discrepancy, he discussed the same with Defendant Olson, who paid him the difference in cash from the register or otherwise explained the discrepancy. (*Id.* at ¶ 78-79.)

During Mr. Shivalec's employment at Defendant MMMC, Defendants also operated a "time trading" system, whereby Defendant Olson purchased personal items for Mr. Shivalec through Defendant MMMC and then took reimbursement for the same by deducting and not otherwise compensating Mr. Shivalec for compensable hours of work equivalent to the value of the personal items. (*Id.* at ¶¶ 89-90.) In total, Defendants "traded" Mr. Shivalec's compensable hours of work for approximately $1,883.20 in reimbursements for personal items and cash. (*Id.* at ¶ 92.)

On occasions when Defendants deducted compensable overtime hours from Mr. Shivalec for purposes of reimbursing Defendant MMMC for purchases of personal items, Defendant did so at an overtime rate of $28.00 per hour, rather than one and one-half times Mr. Shivalec's regular hourly rate of $22.00, or $33.00 per hour. (*Id.* at ¶ 94.) Defendants made these deductions based on Defendant Olson's handwritten hours, rather than Mr. Shivalec's actual hours of work as recorded by his punches. (*Id.* at ¶ 93.) As a result, Defendants frequently miscalculated the deductions, deducting and not compensating Mr. Shivalec for hours equating to a value greater than the amount to be reimbursed. (*Id.* at ¶ 95.)

Further and during Mr. Shivalec's employment at Defendant MMMC, Defendants periodically did not compensate Mr. Shivalec for all hours worked in excess of forty (40) in a workweek as calculated by Defendant Olson. (*Id.* at ¶ 96.)

<u>**ARGUMENT**</u>

## I.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (emphasis added). A "genuine dispute" exists when a jury could find or return a verdict in favor of the non-moving party, and a "material fact" is one that could actually affect the outcome of the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In evaluating whether summary judgment is appropriate, a court must construe all facts and reasonable inferences in favor of the non-moving party, Mr. Shivalec. *Id.* at 255; *Tolan v.*

*Cotton*, 134 S. Ct. 1861, 1863 (2014); *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008). Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Tolan*, 134 S. Ct. at 1866; *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004) (*per curiam*). A "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Tolan*, 134 S. Ct. at 1866. When a court fails to credit a non-movant's evidence that contradicts some of its key factual conclusions, the court improperly "weigh[ed] the evidence" and resolved the disputed issues in favor of the moving party. *Id.*; *Liberty Lobby*, 477 U.S. at 249.

In this case and as demonstrated in his motion for summary judgment and herein, this Court should grant summary judgment to Mr. Shivalec and against Defendants because there are no *genuine* disputes of *material* fact and he is entitled to judgement as a matter of law. This Court should also deny Defendants' Motion because they do not dispute liability as to Mr. Shivalec's pre- and post-shift hours of work, proffer an argument regarding lunchbreaks that is not legally cognizable and also admits liability, and is otherwise premised on misrepresentations, red herrings, and other immaterial and inconsequential facts that neither support entry of summary judgment against Mr. Shivalec nor rise to the level of creating genuine disputes of material fact that could otherwise prevent the Court from entering summary judgment against them.

## II. THIS COURT SHOULD DENY DEFENDANTS' SUMMARY JUDGMENT MOTION AND GRANT SUMMARY JUDGMENT IN FAVOR OF MR. SHIVALEC BECAUSE EVIDENCE IN THE RECORD SHOWS THAT DEFENDANTS VIOLATED THE FLSA AND WWPCL BY FAILING TO COMPENSATE MR. SHIVALEC FOR ALL HOURS THEY SUFFERED OR PERMITTED HIM TO WORK, AS RECORDED ON HIS TIMECARDS

The FLSA and WWPCL provide that all time that employers suffer or permit an employee to work must be compensated. *See* 29 U.S.C. §§ 206(a), 207(a); WIS. STAT. §§ 109.01(3),

109.03(1). "Work not requested but suffered or permitted is work time … The reason is immaterial." 29 C.F.R. § 785.11.

"The FLSA imposes an obligation on the employer 'to exercise its control and see that the work is not performed if it does not want it to be performed.'" *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.13); *see also Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017), *cert. denied sub nom. Allen v. City of Chicago, Ill.*, 138 S. Ct. 1302 (2018) ("If the employer does not want to pay overtime, its management must exercise its control and see that the work is not performed."). "The employer cannot sit back and accept the benefits without compensating for them." *Kellar*, 664 F.3d at 177. "The employer's duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours." *Id.* (internal citations omitted).

"However, the FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Id.* "The employer's knowledge can be either actual or constructive." *Allen*, 865 F.3d at 938. An "employer's knowledge is measured in accordance with his duty to inquire into the conditions prevailing in his business. An employer does not rid himself of that duty because the extent of the business may preclude his personal supervision." *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) (internal citations omitted). "The cases must be rare where prohibited work can be done and knowledge of the consequences of knowledge avoided." *Id.* (internal citations omitted).

"In reviewing the extent of an employer's awareness, a court need only inquire whether the *circumstances* were such that the employer had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." *Id.* (emphasis in original) (internal citations omitted); *see also Allen*, 865 F.3d at 938 (stating that "[a]n employer has

12

constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence."). Stated differently, an "employer can only escape liability by showing that *in addition to* not having actual knowledge of the work, it did not have constructive knowledge because reasonable diligence would not have helped the employer learn of the work." *Meadows v. NCR Corp.*, 2017 WL 5192009, at *8 (N.D. Ill. Nov. 9, 2017) (emphasis added).

An employer's knowledge of overtime work being performed "need not arise *concurrently* with the performance of overtime, for good reason." *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008) (emphasis in original). "The [FLSA's] overtime provisions apply to work performed off premises, outside of the employer view and sometimes at odd hours, where an employer's concurrent knowledge of an employee's labor is not the norm." *Id.*

### A. Mr. Shivalec's Timecards Accurately Reflect His Hours Worked

As the United States Supreme Court stated in *Mt. Clemens Pottery Co.*:

> An employee who brings suit under s 16(b) of the Act for unpaid minimum wages or unpaid overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of the statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the *employer* who has the duty under s 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.
> . . .
> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. . . . In such a situation, we hold that an employee has carried out his burden if he proves that he has in fact performed worked for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden

13

> then shifts to the employer to come forward with evidence of the *precise amount* of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

328 U.S. at 686-88 (emphasis added).

Here, Defendants maintained Mr. Shivalec's timecards – their sole method of recording Mr. Shivalec's hours worked, (PPFOF, ¶ 26) – in compliance with the FLSA.[9] By procuring production of the same as demonstrated to the Court,[10] Mr. Shivalec satisfied his legal burden of establishing his hours worked and, therefore, his damages. *See Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008) (stating that "once a plaintiff establishes a violation of the FLSA, the plaintiff must establish damages, and . . . the task is not a difficult one where the employer has kept time records in compliance with the FLSA. In that circumstance, the accurate time records will establish the amount of damages"); *Ingram v. Hagen*, 161 F.Supp.3d 639, 644 (S.D. Ill. 2015) (stating that "[t]he damages burden a plaintiff has to shoulder depends on the existence of accurate and adequate time records: if those records exist, damages can be proven with them"); *Schremp v. Langlade Cty.*, 2012 WL 3113177, at * 3 (E.D. Wis. July 31, 2012) (stating that "[w]here an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages").

---

[9] 29 C.F.R. § 516.2(a)(7) requires that such records must include the "[h]ours worked each workday and total hours worked each workweek." Defendants' timecards satisfy this requirement. (*See, e.g.,* Declaration of James A. Walcheske ("Walcheske Decl."), ¶ 8, Exhibit D.)

[10] *See id.*

In Defendants' Brief, Defendants proffer the novel[11] argument that its own time records are inaccurate. (*See* Def. Br., pp. 22-24.) Specifically, Defendants contend that "Milwaukee Cycle's time cards are accurate as to the time Shivalec was on the premises, but not accurate as to the time Shivalec worked because Shivalec did not punch out when he took breaks. (*Id.* at p. 24.) Based on such alleged inaccuracy, Defendants further argue that Mr. Shivalec cannot rely on the timecards to establish damages, but rather has to satisfy the "just and reasonable inference," which, they allege, he cannot do, necessitating the dismissal of his case. (*See id.* at pp. 24-30.)

Defendants' argument is disingenuous to say the least because Defendants continually admit that their timecards are, in fact, accurate. For example, Defendants state as "fact" that "Olson has reviewed all of Shivalec's time cards and believes that Shivalec was paid for every hour he was performing compensable work." (DPSOF, ¶ 114.) Similarly, Defendants represent that "Shivalec maintained his own time record notes throughout the duration of his employment," and that "the notes would reveal his true working time." (Def. Br., p. 24.) These notes were nothing more than a handwritten record of Mr. Shivalec's punches on his timecards. (PPFOF, ¶ 81.) Further, Defendants state as fact that employees could review their timecards prior to payroll, (DPSOF, ¶ 22), and "can review their time cards with Olson after their pay check is issued <u>if they want to double check their pay is accurate</u>." (*Id.* at ¶ 26) (emphasis added).

Further, testimonial evidence in the record demonstrates that Mr. Shivalec's timecards are an accurate record of his hours worked during his employment with Defendants. For example, Defendant Olson explicitly stated that he expected Mr. Shivalec to record his hours of work

---

[11] Plaintiff has been unable to find a single case where a defendant-employer attempted to avoid liability by arguing that its own records were inaccurate or unreliable. Rather, all such arguments were seemingly raised by plaintiff-employees who argued that the employer's time records were unreliable, in that they did not record or reflect all hours actually worked. *See, e.g., Mt. Clemens Pottery Co.*, 328 U.S. 680; *Brown*, 534 F.3d 593.

15

accurately using Defendants' timecards. (PPFOF, ¶ 29.) Correspondingly, Mr. Shivalec recorded his hours of work as accurately as possible using Defendants' timecards. (*Id.* at ¶ 30.)

For all such reasons, the record makes clear that Mr. Shivalec's timecards are an accurate record of his hours worked. Consequently, <u>all</u> of the cases cited by Defendants concerning the "just and reasonable inference" are inapplicable and <u>all</u> of Defendants' assertions regarding Mr. Shivalec's memory and what he can and cannot specifically recall are completely irrelevant.

Indeed, all of the cases Defendants' relied upon in support of their arguments apply only in situations where no reliable records existed and the employee tried to establish damages based on recollection alone. *See, e.g. Gatto v. Mortg. Specialists of Illinois, Inc.*, 442 F.Supp.2d 529, 536 (N.D. Ill. 2006) (finding that employee's sole evidence – the employee's "declaration asserting without specificity that she worked more than 40 hours per week 'nearly every week'" – was insufficient); *Wood v. Mid-Am. Mgmt. Corp.*, 192 F. App'x 378, 380 (6th Cir. 2006) (finding that an employer did not have knowledge of work performed by plaintiff who "says that he regularly performed, but did not report, duties after normal hours").

Such is clearly not the situation here. Mr. Shivalec demonstrably *did* record all of his compensable hours worked, the parties and the Court possess the records demonstrating the same, the record demonstrates the accuracy of those records, and Defendants are merely attempting to avoid liability for paying Mr. Shivalec what those accurate timecards dictate he is lawfully owed.

**B.** **Even If This Court Applies The Just And Reasonable Standard, Mr. Shivalec's Evidence Satisfies That Standard And Defendants Cannot Rebut The Same**

Even if, *arguendo*, this Court applies the "just and reasonable inference" to this case, Mr. Shivalec's timecards as utilized during his employment are sufficient evidence to show the amount and extent of work he performed, satisfying his legal burden of proof. *See, Gatto*, 442 F.Supp.2d at 535 (holding that employee's timecards showing workweeks longer than forty (40) hours created

16

a just and reasonable inference that the employee may be eligible for overtime compensation). Thus and under this framework, the burden in this case is Defendants', not Mr. Shivalec's, "to come forward with evidence of the *precise amount* of work performed or with evidence to negative the reasonableness of the inference to be drawn from [Mr. Shivalec's] evidence." *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88 (emphasis added). If Defendants fail to do so, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Here, Defendants contend that "Milwaukee Cycle's time cards are . . . not accurate as to the time Shivalec worked because Shivalec did not punch out when he took breaks. (Def. Br., p. 24.) Specifically, Defendants assert that Mr. Shivalec "at[e] breakfast when he came to work," (*id.* at p. 23), "ate lunch with other Milwaukee Cycle employees on the main floor in the shipping area," (*id.*), "stayed after hours to work on personal items," (*id.*), and "made personal calls for extended periods of time." (*Id.*) However, this argument fails.

First, that Mr. Shivalec did not punch out for each minute he may not have been performing compensable work is no one's fault but Defendants because they set the policies by which Mr. Shivalec abided in the workplace, (PPFOF, ¶ 16), and Defendants' policies required Mr. Shivalec to punch out only if he left their premises. ((Pl. Resp. DPSOF, ¶¶ 16, 20, 54, 88.) Defendants cannot complain, after-the-fact, that their timecards are somehow inaccurate or unreliable as a result. Instead, Defendants must suffer the consequences of their actions, with their timecards being the only reliable source of Mr. Shivalec's hours worked. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 315 (7th Cir. 1986) (finding that the defendant had to "suffer the consequences" for any inaccuracy that "made it difficult to ascertain the truth" about hours worked because it was defendant's burden to keep accurate pay records); *see also Mt. Clemens Pottery Co.*, 328 U.S. at 688 (stating that "even where the lack of accurate records grows out of a bona fide mistake as to

17

whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances"); *Schremp*, 2012 WL 3113177, at * 3.

Second, Defendants cannot negate the inference of reasonableness created by its own timecards because they do not offer any more than vague and speculative "evidence," that, at best, suggests that from time-to-time Mr. Shivalec <u>may</u> have eaten breakfast and lunch, worked on personal items, and talked on the phone for unknown and unascertainable periods of time on unknown and unascertainable dates, while maybe or maybe not simultaneously performing compensable work. Clearly such evidence does not come close to satisfying Defendants' evidentiary burden. *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88; *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F.Supp.2d 803, 817 (N.D. Ill. 2011) (finding that employer's "speculations" regarding the employee's conduct were insufficient and did "no more than raise a metaphysical doubt about the other side's evidence").

### C. Defendants Violated the FLSA and WWPCL By Failing To Compensate Mr. Shivalec For All Hours Suffered Or Permitted To Work During His Continuous Workday And As Recorded On His Timecards

The FLSA requires employers to pay employees a minimum hourly wage for all "hours worked,"[12]including work that employers do not want performed,[13] unless the time at issue is *de minimis. See Mt. Clemens Pottery Co.*, 328 U.S. at 692. Similarly, WIS. ADMIN. CODE § DWD 274.03 states, in part: "each employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." The WWPCL further mandates that employers compensate its employees for all hours worked, including those

---

[12] 29 U.S.C. §§ 206, 207
[13] *Kellar*, 664 F.3d at 177; 29 C.F.R. § 785.11

18

not worked in excess of forty (40) hours in a workweek, at their agreed-upon wage. *See* WIS. STAT. §§ 109.01(3), 109.03(1).

The United States Supreme Court has held that under the "continuous workday rule," "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005) (*citing* 29 C.F.R. § 790.6(b)). Pursuant to the "continuous workday rule," employees "**must** be compensated for time they spend doing what might otherwise be non-compensable activities if those activities occur during the period between commencement and completion on the same workday of an employee's principal activity or activities, subject to FLSA carve outs." *Mitchell v. JCG Indus. Inc.,* 753 F.3d 695, 696 (7th Cir. 2014) (emphasis added); *see also IBP, Inc.,* 546 U.S. at 37 (2005); *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F.Supp.3d 822, 833, (N.D. Ill. 2017) (noting that "[t]he term 'hours worked' includes all time during which an employee is suffered or permitted to work whether or not he is required to do so"); *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F.Supp.3d 447, 476 (S.D.N.Y. 2014) (finding that alleged "noncompensable activities" cited by the defendant "undisputedly took place *during* the dancers' workday. Accordingly, there is no issue of fact with respect to the amount of time for which dancers are entitled to be compensated. They are entitled to be compensated for all hours worked between the time they logged in until the time they logged out") (emphasis in original); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 953 (W.D. Wis. 2008) (stating that "[u]nder the FLSA, an employee must be compensated for *all* hours worked which is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness").

Case 2:17-cv-01245-WED   Filed 09/20/18   Page 19 of 31   Document 39

Regulations recognize that minor discrepancies between punches on a timecard and actual hours of work will happen and do not affect Defendants' responsibility to compensate Mr. Shivalec for all hours worked during his continuous workday as reflected on his timecards. *See* 29 C.F.R. § 785.48(a) (stating that "[m]inor differences between the clock records and actual hours worked cannot ordinarily be avoided"). Rather, the only "carve out" available to Defendants (*i.e.,* time for which Defendants were not required to compensate Mr. Shivalec) is bona fide meal periods. *See Mitchell*, 753 F.3d at 696 (stating that employee must be paid for entirety of workday, "except for the *bona fide* lunch break"); *see also Perez v. Mountaire Farms, Inc.,* 650 F.3d 350, 363 (4th Cir. 2011); *Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 472 (S.D.N.Y. 2015) ("All of the time worked during a continuous workday is compensable, save for bona fide meal breaks"); *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *21 (W.D. Wis. Apr. 11, 2011) (stating, "any activities performed *within* this 'workday' are generally compensable").

Here, **Defendants do not dispute that Mr. Shivalec performed and was not compensated for pre- and post-shift work. Accordingly, Defendants do not contest liability and damages relating to the same**. Rather and vis-à-vis Defendants' attacks on its own time records, Defendants suggest that they could lawfully deduct thirty (30) minutes from Mr. Shivalec's hours worked each day he worked more than eight (8) hours because he did not punch out for "breaks" during his workday. (Def. Br., p. 24.) Specifically, Defendants contend that Mr. Shivalec "at[e] breakfast when he came to work," (*id.* at p. 23), "ate lunch with other Milwaukee Cycle employees on the main floor in the shipping area," (*id.*), "stayed after hours to work on personal items," (*id.*), and "made personal calls for extended periods of time." (*Id.*) Based on these alleged activities, Defendants asserted as "fact" that "Olson believes that Shivalec was able to take his 30 minute break every day based on the frequency that he came upstairs to eat breakfast and

20

lunch, the frequency that he went outside to make calls, and the amount of work he performed for his family and friends while at the shop."[14] (DPSOF, ¶ 85.)

However, all of the activities cited by Defendants occurred *after* Mr. Shivalec punched in for the work day and *before* he punched out for the work day,[15] *i.e.,* during Mr. Shivalec's continuous workday. Indeed, the evidence in the record demonstrates that Mr. Shivalec performed compensable work after punching in and before punching out, (PPFOF, ¶ 32), and that Defendants assumed he was performing work while punched in. (*Id.* at ¶ 33; Pl. Resp. DPSOF, ¶ 50.)

Thus, the question is not what alleged non-compensable activity Mr. Shivalec performed during his workday, but rather whether the length of time he was allegedly relieved from duty, if any, transformed his compensable "break" into a *bona fide*, non-compensable meal period. *See Naylor v. Securiguard,* 801 F.3d 501, 505 (stating that "the duration of the break [is] the key factor in whether it is classified as the shorter, compensable 'rest break' or the longer, noncompensable 'meal period'"); *see also Mitchell*, 753 F.3d at 696 (stating that employee must be paid for entirety of workday, "except for the *bona fide* lunch break"); *Perez,* 650 F.3d at 363; *Salinas*, 123 F.Supp.3d at 472 (stating that "[a]ll of the time worked during a continuous workday is compensable, save for bona fide meal breaks"); *Espenscheid*, 2011 WL 10069108, at *21 (stating, "any activities performed *within* this 'workday' are generally compensable"). Defendants bear the

---

[14] The obvious, non-consecutive nature of this assertion is addressed *infra.*

[15] Notably, Defendants insinuate in Defendants' Brief and PSOF that Mr. Shivalec performed work on personal property while punched in. (*See* Def. Br., pp. 8, 10-11, 23, 26; DPSOF, ¶¶ 92-94.) However, in so stating, Defendants omitted from the Court evidence in the record from Mr. Shivalec explicitly stating that he did work on personal property at Defendant MMMC, but *only after he punched out.* (PPFOF, ¶¶ 85-87.) This is the only evidence in the record regarding whether he was punched in or out at the time. Indeed, the "evidence" Defendants cite in support of Mr. Shivalec performing such work *while punched in* is Paragraph 92 of Defendant Olson's Declaration, wherein he merely states that he "believe[s]" that this occurred, (Declaration of Ronald Olson, ECF No. 34, ¶ 92), which is improper not only for a declaration, but also for purposes of being a "fact" in support of summary judgment. *See Thornton v. M7 Aerospace LP,* 796 F.3d 757, 768-69 (7th Cir. 2015); *Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006); *Sybron Transition Corp. v. Sec. Ins. Co. of Hartford,* 107 F.3d 1250, 1255 (7th Cir. 1997); *Nabat v. Aetna Cas. Sur. Co.*, 45 F.3d 432 (7th Cir. 1995).

burden of proof as to this issue, *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F.Supp.2d 1043, 1051 (E.D. Wis. 2010), a burden it demonstrably cannot carry.

The FLSA and WWPCL differentiate between compensable breaks and non-compensable, *bona fide* meal periods, with both laws using thirty (30) minutes as the key differentiator. Under the FLSA, a *bona fide* meal period is a duty-free[16] period lasting "30 minutes or more," with the possibility of a shorter period sufficing "under special conditions."[17] 29 C.F.R. § 785.19. Under the WWPCL, employers "*shall* pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work." WIS. ADMIN. CODE § DWD 274.02(3) (emphasis added). Thus, under both the FLSA and WWPCL, a break must be duty-free and at least thirty (30) consecutive minutes in duration to be non-compensable. *Id.*; 29 C.F.R. § 785.18; *Petrone v. Werner Enterprises, Inc.*, 121 F.Supp.3d 860, 869 (D. Neb. 2015), *on reconsideration in part*, 2016 WL 1559571 (D. Neb. Apr. 18, 2016), and *amended*, 2017 WL 510884 (D. Neb. Feb. 2, 2017).

Such *bona fide* meal periods are distinguishable from compensable, "regular breaks," consisting of less than thirty (30) consecutive minutes. 29 C.F.R § 785.18; WIS. ADMIN. CODE § DWD 274.02(3); *Petrone*, 121 F.Supp.3d at 869 ("It is the general rule under federal law that breaks of less than thirty minutes are compensable"); *Marshall*, 170 F.Supp.3d at 1299.

---

[16] "Courts have held entire meal breaks to be compensable under the FLSA when employees continued to have job duties during their breaks." *Burks v. Equity Grp.-Eufaula Div., LLC*, 571 F.Supp.2d 1235, 1247-48 (M.D. Ala. 2008) (collecting cases).

[17] In instances where Defendants wish to argue that Mr. Shivalec took a non-compensable meal period lasting less than thirty (30) minutes, Defendants bear the burden of proving that Mr. Shivalec was duty-free for the entirety of the period <u>and</u> that special conditions existed. *Marshall v. Pollin Hotels II, LLC*, 170 F.Supp.3d 1290, 1299 (D. Or. 2016). Factors to be considered are set forth in the Department of Labor Wage and Hour Division's Field Operations Handbook, § 31b23, available at http://www.dol.gov/whd/FOH/FOH_Ch31.pdf. Notably, Defendants did not raise this argument in Defendants' Brief and it is, therefore, waived.

Here, Defendants base their automatic thirty (30) minute deduction on "Olson's [subjective] belie[f] that Shivalec was able to take his 30 minute break every day based on the frequency that he came upstairs to eat breakfast and lunch, the frequency that he went outside to make calls, and the amount of work he performed for his family and friends while at the shop."[18] (Pl. Resp. DPSOF, ¶ 85.) Even accepting Defendant Olson's "belief" as true, this statement dictates that Defendants' thirty (30) minute deduction was predicated on multiple short and non-consecutive periods of time during which Mr. Shivalec was allegedly not performing compensable work. However, those periods cannot be combined to form one consecutive and duty-free thirty (30) minute period. Rather, each of these alleged instances are distinct, non-consecutive, and compensable "breaks." *See* 29 C.F.R. § 785.18; *see also Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.,* 873 F.3d 420, 425 (3d Cir. 2017), *cert. denied sub nom. Am. Future Sys., Inc. v. Acosta,* 138 S. Ct. 2621 (2018); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 442 (S.D Ind. 2012); *Kasten*, 556 F.Supp.2d at 953.

Put differently, there is nothing non-compensable about Mr. Shivalec taking breaks during his workday. Talking on or looking at his phone, sitting down, or whatever else, none of it matters if it was not completely duty-free and/or lasted less than thirty (30) consecutive minutes.

To that end, the *only* instances in which Defendants indicate a break taken by Mr. Shivalec *may have* lasted at least thirty (30) consecutive minutes were when he left Defendants' premises to get food for himself and/or others and on "Grilled Cheese Wednesdays[19]." (Def. Br., p. 9.) Defendants also vaguely indicate that "[d]uring the winter months, employees often took breaks

---

[18] Notably, Defendants state as fact that Defendant Olson did not "time" any alleged non-compensable activities engaged in by Mr. Shivalec. (*See* Pl. Resp. DPSOF, ¶¶ 66, 84, 95, 105.)

[19] Defendants note (Def. Br., p. 9) and the record shows, (PPFOF, ¶ 60), that Mr. Shivalec cooked on some of these days, dictating that even if Mr. Shivalec did participate in some or all of the un-enumerated "Grilled Cheese Wednesdays," they were not completely duty-free as required by the FLSA and WWPCL because a portion of the time was spent in service of and predominantly benefited Defendants. (*See id.*)

and lunches that regularly exceeded 30 minutes because there are not a lot of work activities for them to perform during winter months," (*id.* at p. 10); however, Defendants do not state any facts to the effect that Mr. Shivalec was one of these "employees."

With respect to these potential activities, Defendants do not cite any facts in the record: identifying what date(s), if any, Mr. Shivalec actually took any such breaks; assuming Mr. Shivalec did take such breaks, the actual, <u>duty-free</u> duration of the break(s); or assuming Mr. Shivalec did take such breaks, whether Mr. Shivalec was punched in or out during the break(s).[20] Further, Defendants admit that Defendant "Olson did not 'time' Shivalec to determine how long it took him to each his lunch," (DPSOF, ¶ 66), or "schedule or monitor his breaks." (Def. Br., p. 20.)

Thus, at best, Defendants' argument starts where it begins: with Defendant Olson's "belief" that Mr. Shivalec engaged in multiple, subjectively non-compensable activities totaling approximately thirty (30) minutes each workday he worked at least eight (8) hours. Such speculation or conjecture is incapable of being a material fact,[21] and is woefully insufficient to carry Defendants' burden of proof of proving that its automatic thirty (30) minute deductions were justified because they accounted for *bona fide* meal breaks, rather than shorter and/or duty-free, compensable breaks. *DeKeyser*, 747 F.Supp.2d at 1051.

Moreover, to the extent that Defendants argue that Mr. Shivalec took "excessive" or overly-frequent breaks such that they did or should not have to compensate them,[22] Defendants recourse was to discipline Mr. Shivalec, not fail to compensate him. *Am. Future Sys., Inc.*, 873 F.3d at 432 (stating that "[w]here the employee is taking multiple, unscheduled nineteen minute breaks over

---

[20] The evidence in the record is that Defendants required their employees to punch out if they left their premises and that Mr. Shivalec complied with this requirement. (Pl. Resp. DPSOF, ¶¶ 16, 20, 54, 88; PPFOF, ¶¶ 54, 58.)
[21] *Thornton*, 796 F.3d at 768-69; *Sybron Transition Corp.*, 107 F.3d at 337; *Karazano v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991)
[22] Defendants did not raise this argument in Defendants' Brief.

and above his or her scheduled breaks for example, the employer's recourse is to discipline or terminate the employee—not to withhold compensation"); *see Kasten*, 556 F.Supp.2d at 953 (stating that a "Defendant is entitled to take disciplinary measures against employees who take excessively long breaks, but it cannot be permitted to offset such time against uncompensated work time in its attempt to satisfy the requirements placed on it under the FLSA.").

Pursuant to the FLSA and WWPCL, Defendants were legally required to compensate Mr. Shivalec for all "breaks" or other non-compensable activities that were not duty-free and/or lasted less than thirty (30) consecutive minutes during his continuous workday. 29 C.F.R. § 785.19; WIS. ADMIN. CODE § DWD 274.02(3). Defendants not only demonstrably failed to do so, but also brazenly base their summary judgment motion on this failure. Accordingly, this Court should not only deny Defendants' Motion, but also grant Plaintiff's summary judgment motion.

## III. DEFENDANTS' MISSTATEMENTS OF FACT DO NOT RISE OF THE LEVEL OF GENUINE DISPUTES OF MATERIAL FACT AFFECTING THE ENTRY OF SUMMARY JUDGMENT AGAINST DEFENDANTS

As noted herein, Defendants' Brief is littered with misstatements of facts and, at times, even completely fabricated facts (as are Defendants' PSOF). (*See* Introduction, *supra*.) Indeed, Mr. Shivalec could likely devote the entirety of his thirty (30) page allotment responding to the same with citations to actual facts and evidence in the record. However, any "disputes" created by such "facts" do not rise to the level of creating genuine disputes of material fact because they unsupported by the record, generally irrelevant or unnecessary, and do not affect the outcome of this case. *Liberty Lobby, Inc.*, 477 U.S. at 248.

Defendants' bluster and red herrings aside, the following is undisputed: (1) Defendants' sole means of recording Mr. Shivalec's hours worked was its punch clock and timecard system[23];

---

[23] (PPFOF, ¶ 26)

(2) Defendants expected Mr. Shivalec to record his time accurately using their timecards[24]; (3) Mr. Shivalec used Defendants' timecards to record his hours worked[25]; (4) Defendants did not compensate Mr. Shivalec for all hours recorded by his punches, but rather compensated him based on his scheduled hours of work[26] [27]; and (5) Defendants additionally deducted thirty (30) minutes of compensable time from Mr. Shivalec's hours worked in each day he worked eight (8) or more hours, regardless of whether he took a *bona fide* meal break or punched out for a period lasting less than thirty (30) consecutive minutes.[28] These undisputed facts establish that Defendants violated the FLSA and WWPCL by failing to compensate Mr. Shivalec for all hours they suffered or permitted him to work, including at an overtime rate for all hours worked in excess of forty (40) in a workweek. Quite literally, <u>nothing</u> argued by Defendants changes this outcome or creates anything more than a metaphysical doubt as to Mr. Shivalec's material facts, which is insufficient to prevent summary judgment against Defendants.[29] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Dominguez*, 790 F.Supp.2d at 817.

---

[24] (*Id.* at ¶ 29)

[25] (*Id.* at ¶ 31)

[26] (*Id.* at ¶¶ 41, 44-47.)

[27] In Defendants' Brief, Defendants curiously state for the first time that "Milwaukee Cycles generally rounds the time card punches to the nearest quarter hour; this operates neutrally, both in favor of the employee and against the employee depending on the punch in or punch out time." (Def. Br., p. 5.) Beyond the Declaration of Ronald Olson, there is no evidence in the record supporting this. (DPSOF, ¶ 25.) Further, Defendant Olson's Declaration conflicts with his own deposition testimony, wherein he repeatedly stated and acknowledged that he calculated Mr. Shivalec's compensable hours based on his scheduled shift, not his actual punches. (PPFOF, ¶40.) Moreover, the record demonstrates that even if Defendant Olson somehow forgot that Defendants operate a "rounding" system during his deposition, there is nothing in the record supporting the "neutral" operation of the same. Indeed, the record shows that Olson merely shaved Mr. Shivalec's recorded hours of work commencing before and after his scheduled shift – in this way ***always to Mr. Shivalec's detriment***. (*Id.* at ¶ 97.)

Regardless, Defendant Olson's conflicting testimony is insufficient to create a genuine issue of material fact, *In re Norsom Med. Reference Lab.*, 41 B.R. 846, 847-48 (Bankr. N.D. Ill. 1984), and Defendant Olson's deposition testimony controls, rather than his conflicting declaration. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532-33 (7th Cir. 1999); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995).

[28] (PPFOF, ¶ 73.)

[29] This includes, but is not limited to, what Mr. Shivalec's coworkers allegedly "knew" or thought they knew about what he did each day, which is irrelevant to this case. (*See* ECF Nos. 35-37.) Putting aside the lack of foundation and speculation pervading the "facts" attributable to these coworkers, there is nothing in the record establishing or even implying that they either shared their alleged knowledge with Defendants or that their knowledge can be imputed to Defendants. (*See* ECF Nos.34-37; DPSOF.) In other words, what they say they knew has no impact whatsoever on

## IV. MR. SHIVALEC'S DAMAGES HAVE BEEN CALCULATED WITH PRECISION

The crux of Defendants' Motion is that Mr. Shivalec is unable to calculate his damages. However, as discussed *infra*, the parties and the Court have the benefit of Mr. Shivalec's timecards, which provide an accurate source of his hours worked for purposes of not only establishing Defendants' liability, but also Mr. Shivalec's damages. (Section II(A), *infra*.)

Defendants do not dispute in Defendants' Brief that Mr. Shivalec worked before and after his scheduled shift and that Defendants did not compensate him for the same. Explained herein, Defendants further do not have any evidence supporting the legitimate application of its automatic thirty (30) minute deduction, and admit that it was based on an approximate total of other, non-consecutive and otherwise compensable breaks under the FLSA and WWPCL. In short, Defendants do not dispute and indeed admit that they violated the FLSA and WWPCL by failing to compensate Mr. Shivalec for all hours they suffered or permitted them to work.

Mr. Shivalec's damages flowing from these violations are readily ascertainable via simple comparison of his hours worked as recorded on his timecards, and the corresponding amount of compensation he should have received, with the compensation Defendants actually provided to him. Mr. Shivalec performed these calculations and determined that Defendants owe him approximately $5,281.86 in unpaid wages, before liquidated damages. (*See* Walcheske Decl., ¶ 11, Exhibit G.)

## V. MR. SHIVALEC IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE FLSA

Employers who violate the FLSA "*shall* be liable to the . . . employees affected in the amount of their . . . unpaid overtime compensation [and] additional equal amount as liquidated

---

the ultimate issue of whether Defendants violated the FLSA and WWPCL – *i.e.*, their statements are not "material facts" that could affect the outcome of this case. *Liberty Lobby, Inc.*, 477 U.S. at 248

damages." 29 U.S.C. § 216(b) (emphasis added). However, if an employer's violation of the FLSA was in good faith *and* reasonable, it will not be liable for liquidated damages under the FLSA. *See* 29 U.S.C. § 260. Employers bear the burden of proving both good faith and reasonable belief,[30] which is an objective standard under the FLSA. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303. 312 (7th Cir. 1986).

An employer's burden of proof to avoid liquidated damages is substantial. *Bankston,* 60 F.3d at 1254. Under the FLSA, there is a strong presumption in favor of awarding liquidated damages because they are an ordinary remedy under the FLSA. *See, e.g., Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 672 (7th Cir. 2010); *Uphoff,* 176 F.3d at 405; *Walton,* 786 F. 2d at 310; *Dominici v. Bd. of Educ. of City of Chicago*, 881 F. Supp. 315, 321-22 (N.D. Ill. 1995).

These damages are neither meant to punish an employer, 29 C.F.R. § 790.22, nor are they "some disfavored 'penalty.'" *Walton,* 786 F.2d at 310. Rather, they are meant to make employees whole for wages not paid on time. 29 C.F.R. § 790.22. The Seventh Circuit has confirmed this tenant in FLSA cases: "Doubling is the norm, not the exception." *Uphoff*, 176 F.3d at 405; *Shea,* 152 F.3d at 733; *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F.3d 1219, 1223 (7th Cir. 1995).

An employer's "subjective beliefs do not amount to proof of good faith unless they were reasonable," *Bankston*, 60 F.3d at 1255, and "[a] good heart but an empty head does not produce a defense." *Walton,* 786 F.2d at 312. When an employer fails to take measurable steps towards determining whether it is complying with the responsibilities imposed by the FLSA, a lack of good faith is established. *Bankston*, 60 F.3d at 1255; *see also* 29 C.F.R. § 790.15; *Bratt v. County of Los Angeles,* 912 F.2d 1066, 1072 (9th Cir. 1990), *cert. denied,* 498 U.S. 1086 (1991) (noting that, in

---

[30] *Uphoff v. Elegant Bath, Ltd*., 176 F.3d 399, 404-05 (7th Cir. 1999); *Shea v. Galaxie Lumber & Constr. Co.,* 152 F.3d 729, 733 (7th Cir. 1998) (citing *Bankston v. State of Ill.,* 60 F.3d 1249, 1254 (7th Cir. 1995)).

order to establish good faith, a defendant must "prove that it had an honest intention to ascertain what the [FLSA] requires and to act in accordance with it.").

Similarly, for an employer to establish it had objectively reasonable grounds for believing its actions did not violate the FLSA, it must establish that it took affirmative steps to determine its FLSA requirements but, nevertheless, violated the FLSA. *Dominici*, 881 F. Supp. at 321-22; *Pautlitz v. City of Naperville,* 874 F. Supp. 833, 834–35 (N.D. Ill. 1994); *Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F. Supp. 860, 871 (S.D.N.Y. 1984) (stating, "ignorance is no defense to a claim for liquidated damages...").

Here, it is clear that Defendant Olson unilaterally controlled all aspects of Mr. Shivalec's compensation. (PPFOF, ¶¶ 9-10, 17, 24, 37-41, 49, 73.) Yet, Defendants offer no facts or evidence demonstrating that Defendant Olson ever took any actions to ensure that he complied with the FLSA or WWPCL with respect to that compensation. This is likely because the record makes clear that with the exception of looking at a poster at Defendant MMMC, (*id.* at ¶ 21), Defendant Olson *never* took any such actions. For this reason alone, liquidated damages are appropriate. *See Bankston*, 60 F.3d at 1255; *see also* 29 C.F.R. § 790.15; *Bratt,* 912 F.2d at 1072 (9th Cir. 1990).

Moreover, the record shows that Defendant Olson's stated justification for not taking any action to stop or prevent Mr. Shivalec from performing compensable work outside of his scheduled shift hours, his presumption that Mr. Shivalec did not any work overtime unless he specifically asked him to, and his failure to instruct Mr. Shivalec what to do in the event he did not take duty-free lunchbreak of thirty (30) consecutive minutes was based on nothing more than his callous assessment that Mr. Shivalec "is an adult." (*Id.* at ¶¶ 55, 72.) Thus, there clearly was no measure of "reasonableness" in Defendants' violations of the FLSA and WWPCL as outlined herein.

For all such reasons, Mr. Shivalec is entitled to liquidated damages in an additional amount equal to his unpaid overtime. 29 U.S.C. § 216(b).

## VI. MR. SHIVALEC IS ENTITLED TO LIQUIDATED DAMAGES UNDER THE WWPCL

WIS. STAT. § 109.11(2)(a) states that a "court may order the employer to pay the employee, in addition to the amount of wages due and unpaid … increased wages of not more than 50 percent of the amount of wages due and unpaid." Thus, this Court has the discretion to award liquidated damages to Mr. Shivalec on any unpaid, non-overtime wages. *See Johnson v. Roma II-Waterford LLC*, 2013 WI App 38, ¶¶ 43-44; *see also Hubbard v. Messer,* 2003 WI 145, ¶ 22. Courts exercise such discretion when the employer's failure to pay the wages "was dilatory or otherwise unjust," *Wolnak v. Cardiovascular & Thoracic Surgeons of Cent. Wisconsin, S.C.*, 2005 WI App 2017, ¶ 58, and not simply "the result of an honest misunderstanding, a mistake, or a reasonable dispute." *Hubbard*, 2003 WI 145 at ¶ 40.

Here, Defendants did not proffer any facts or evidence demonstrating that its violations of the WWPCL were or could have been "the result of an honest misunderstanding, a mistake, or a reasonable dispute." *Id.* Rather, the record demonstrates that Defendants' unlawful conduct was willful and in wanton disregard for the WWPCL: Defendant Olson intentionally disregarded Mr. Shivalec's hours of work as he recorded them and calculated Mr. Shivalec's hours of work and compensation based purely on his scheduled hours of work, (PPFOF, ¶¶ 39-41, 45-47), and failed to take any meaningful actions to determine whether such compensation practices complied with the State law. (*Id.* at ¶ 21.)

For such reasons, this Court should exercise its discretion to award liquidated damages to Mr. Shivalec for all unpaid, non-overtime hours owed to him by Defendants as a result of its violations of the WWPCL, in an amount equal to fifty percent (50%) of all such compensation owed.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this Court should deny Defendants' Motion and grant Mr.

Shivalec's motion for summary judgment. The submissions of the parties make clear that there are no

genuine disputes as to any material fact and no rational, reasonable jury could return a verdict in favor

of Defendants. Thus, Mr. Shivalec is entitled to judgment against Defendants as a matter of law.

Dated this 20th day of September, 2018.

WALCHESKE & LUZI, LLC
Counsel for the Plaintiff


 s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
15850 West Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com

31