UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

STEVEN E. SHIVALEC

    Plaintiff,

v.                                       Case No. 17-CV-1245

MILWAUKEE MIXED METAL CYCLES LLC, *et al.*

    Defendants.

---

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

---

**INTRODUCTION**

    Defendants' Memorandum of Law in Opposition to Plaintiff's Rule 56 Motion to for [sic] Summary Judgment and in Support of Defendants' Cross Motion for Summary Judgment, ECF No. 47 ("Defendants' Response Brief"), suggests an alternate reality where an employer's subjective determination of "fairness" is legally controlling and blatant violations of the law are acceptable, so long as one can concoct arguments to "justify" them. According to Defendants: (1) Mr. Shivalec's scheduled hours of work as handwritten by Defendant Olson on his timecards reflect his *real* compensable hours, not the mechanical punches Defendants maintained for just that purpose; (2) they could deduct thirty (30) minutes of compensable time from Mr. Shivalec because he probably took breaks totaling the same; and (3) their admitted use of an unlawful overtime rate, their blatant failures to compensate Mr. Shivalec for all overtime hours worked, and their excessive deductions of overtime hours through its "time trading system" are all water under the bridge because if one factors in taxes in legally-unsupported fashions, Defendants paid Mr. Shivalec more than he was owed.

However, Defendants' arguments opposing liability and damages are contrary to controlling law, contrary to the facts and evidence in the record, and insufficient to prevent entry of summary judgment against them. For such reasons, as well as all those stated in Plaintiff's Brief in Support of His Motion for Summary Judgment, ECF No. 28 (his "Principal Brief"), this Court should grant summary judgment against Defendants and in favor of Mr. Shivalec.

## DEFENDANTS' PROCEDURALLY-DEFICIENT RESPONSES TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND MISREPRESENTATIONS TO THE COURT

In responding to Mr. Shivalec's summary judgment motion, Defendants repeatedly violated federal and local rules and continued misrepresenting the record to the Court. As a result of such conduct, the Court should consider any facts to which Defendants asserted unresponsive responses and did not cite to the record undisputed for purposes of summary judgment, and sanction Defendants.

First, Defendants violated CIV. L. R. 56(b)(2), which required that Defendants "**must** file" their responsive materials within thirty (30) days, by filing Defendants' Amended Response to Plaintiff's Proposed Findings of Fact, ECF No. 49 ("Def. Am. Resp. PPFOF"),[1] thirty-eight (38) days later and over halfway through Mr. Shivalec's reply period.

Second, Defendants violated CIV. L. R. 56(b)(2)(B)(ii), which required Defendants to file a statement of "any additional facts that require the denial of summary judgment," not to exceed "100 separately-numbered statements of additional fact," by failing to make any such filing and, instead, re-incorporating the 150 statement of facts filed in conjunction with their motion for summary judgment. (Defendants' Response Brief, ECF No. 47 ("Def. Resp. Br."), p. 3; ECF No. 32.)

Third, and contrary to the Committee Comment to CIV. L. R. 56(b)(2)(B), Defendants' Amended Response is argumentative at every turn. To illustrate, Defendants' Amended Response

---

[1] Defendants' amendment was significant. It changed three (3) admissions to denials, (*id.* at ¶¶ 10, 63-64), and is thirty-five (35) pages longer than their initial filing. (*Compare* ECF No. 49 *with* ECF No. 46.)

2

turned twenty-five (25) pages of proposed facts into eighty-eight (88) pages of response. (*Compare* ECF No. 29 *with* ECF No. 49.) Indeed, even when Defendants admitted they engaged in argument. (*See, e.g.,* Def. Am. Resp. PPFOF, ¶¶ 26, 37, 56, 93, 98, 122.) Defendants also improperly cited and argued statutes and case law[2] in their responses. (*See id.,* ¶¶ 2, 6, 93-96, 98, 102-112, 114-15.)

Fourth, Defendants violated FED. R. CIV. P. 56(c)(1)(A) and CIV. L. R. 56(b)(2)(B)(i) by not citing to the record in support of their denials. (*See, e.g.,* Def. Am. Resp. PPFOF, ¶¶ 25, 88, 100-112.)

Fifth, Defendants routinely asserted unresponsive denials that did not address the statement of fact or denied for reasons unrelated to the statement of fact. (*See id.*, ¶¶ 21, 33, 39, 43, 47, 55, 62, 65-70, 79, 86, 89-90, 94-95, 99-100, 102-112, 114, 120.) Still other denials asserted by Defendants contradicted their admissions in the record. (*See id.*, ¶¶ 42,[3] 43,[4] 82,[5] 96[6].)

FED. R. CIV. P. 56(e) states, in part, that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Here, and as a consequence of Defendants' continual violations of federal and local rules, this Court should deem all facts Defendants failed to properly dispute admitted for purposes of summary judgment.[7]

---

[2] Defendants also violated CIV. L. R. 7(j)(2) by not providing the Court with a copy of an unreported case – *Henriquez v. Total Bike, LLC*, 2013 WL 6834656, at *2 (S.D. Fla. Dec. 23, 2013) – cited in their materials.

[3] Defendants denied that they "did not utilize any system other than or in addition to its physical punch clock and timecard system for tracking or recording Mr. Shivalec's hours worked." (*Id.*) However, Defendant Olson's deposition testimony was as follows: "Q . . . Beyond the punch clock, during Mr. Shivalec's period of employment, did you have any other methods or manners of recording your employees' hours of work? A No." (ECF No. 30-2, 42:10-14.)

[4] Defendants denied that they "expected Mr. Shivalec to record his hours of work accurately using its punch clock and timecard system." (*Id.*) However, Defendant Olson's deposition testimony was as follows: "Q . . . your employees, including Mr. Shivalec, were responsible for recording their hours of work using the time clock, right? A Correct. Q And your expectation is that they were doing that accurately? A Correct." (ECF No. 30-2, 42:15-21.)

[5] Defendants denied that "Defendant Olson was aware that Mr. Shivalec did not take a lunchbreak of at least thirty (30) consecutive minutes each workday." (*Id.*) However, in discovery Defendants answered "admit" to "Request to Admit No. 3: Admit that, on at least one work day . . . Defendant Ronald Olson was aware that Mr. Shivalec did not take a work-free meal, break, or rest period of at least thirty (30) consecutive minutes." (ECF No. 30-4, p. 5.)

[6] Defendants denied they "traded" "$1,883.20 in reimbursements for personal items and cash." In discovery, Defendants affirmatively asserted that "[t]he plaintiff was compensated a total of $1,883.20 in cash and trade during his employment." (ECF No. 30-4, p. 9.)

[7] Specifically, Paragraphs 21, 25, 33, 39, 43, 47, 55, 62, 65-70, 79, 86, 88-90, 94-95, 99-100, 100-112, 114, and 120.

3

Further, the misrepresentations that began in Defendants' summary judgment filings continued into their response to Plaintiff's summary judgment motion. For example, Defendants contend, "Shivalec admitted he worked on his personal machines . . . sometimes while on the clock (he claims that he would hand write his punch out time when he forgot to punch out)." (Def. Resp. Br., pp. 8, 23.) In support, Defendants quote Mr. Shivalec's deposition transcript, wherein he states that he punched out before he worked on anything personal, and unequivocally answers "No" to the question, "Did you ever forget to punch out before you worked on your bike?" before allegorically stating what he did when he forgot to punch out. (*Id.* at p. 8.)

Similarly, Defendants state: "Overall, Shivalec admitted that because he did not punch out for lunch breaks, phone calls, or breakfast, his raw punch times are not reliable and cannot be used to establish damages." (*Id.* at p. 9.) However, Mr. Shivalec's deposition testimony quoted in support relates to his inability to look at any given timecard and recall exactly what he was doing at any given moment, rather than anything similar to his alleged "admission" (*Id.*)

Defendants also claim, "[t]he vast majority of the time, Shivalec used his lunch period to eat, speak to friends or family, or browse on his phone while he ate." (*Id.* at p. 13.) In support, Defendants cite to Mr. Shivalec's deposition transcript and the Declaration of William Myles, neither of which support this assertion. (*See id.*)

Finally, and in the midst of an unwarranted personal attack on Mr. Shivalec, Defendants highlight and quote at length his initial responses to Defendants' requests for admission, completely omitting the amended responses that superseded the same. (*Id.* at pp. 19-20 (citing Mr. Shivalec's response to requests for admission dated July 2, 2018, ECF No. 33-2, rather than his wholly different amended responses dated August 21, 2018, ECF No. 30-6).)

4

For such reasons, this Court should additionally sanction Defendants for their ongoing and outright misrepresentations of the record to the Court.

**ARGUMENT**

I. **DEFENDANTS INDISPUTABLY VIOLATED THE FLSA AND WWPCL BY FAILING TO COMPENSATE MR. SHIVALEC FOR ALL OVERTIME HOURS WORKED EVEN USING DEFENDANT OLSON'S HANDWRITTEN HOURS, UTILIZING AN UNLAWFUL OVERTIME RATE OF PAY, AND DEDUCTING OVERTIME HOURS FROM MR. SHIVALEC IN EXCESS OF AMOUNTS OWED FOR PERSONAL ITEMS**

In their responsive materials, Defendants admitted multiple FLSA and WWPCL violations, calling for this Court to enter summary judgment against Defendants.

**A. Defendants Admittedly Failed To Compensate Mr. Shivalec For All Overtime Hours Worked, Even Using Defendant Olson's Handwritten Hours**

In their responsive materials, Defendants admit that they failed to compensate Mr. Shivalec on multiple occasions for all overtime hours worked, even using Defendant Olson's handwritten totals of Mr. Shivalec's compensable hours worked. (Def. Am. Resp. PPFOF, ¶¶ 114, 116, 118.)

Evidence in the record further shows that Defendants should have admitted this violation with respect to Mr. Shivalec's hours worked in the workweek ending October 8, 2016, but for their apparently misreading of their own records.

Mr. Shivalec asserted that in the bi-weekly pay period ending October 8, 2016, Defendant Olson's handwritten hours totaled 28 hours in the workweek ending October 2, 2016, and 43.5 hours in the workweek ending October 8, 2016, and that while Defendants compensated him for 71.5 hours, they did not compensate him with any overtime pay. (*Id.* at ¶ 115.) Defendants denied any violation occurred, claiming that they "paid [Mr. Shivalec] $66.00 in goods" in the pay period, *i.e.,* that the overtime hours were "traded" for the personal purchase. (*Id.*) However, this is demonstrably false. Defendants' timecard notations show that the deduction was made in the

5

following pay period, as explicitly noted on the timecards for this pay period,[8] and as recorded on the timecards for the following pay period.[9] Thus, Defendant clearly violated the law by failing to compensate Mr. Shivalec with overtime pay in this instance as well.

### B. Defendants Admittedly Utilized An Unlawful Overtime Rate

In their responsive materials, Defendants admit that beginning the workweek of February 16, 2016, they increased Mr. Shivalec's hourly rate of pay to $22.00 per hour, (Def. Am. Resp. PPFOF, ¶ 17), and that, subsequent thereto, they utilized an unlawful overtime rate of $28.00 per hour, (*id.* at ¶ 100; Def. Resp. Br., pp. 14-15), rather than time and one-half or $33.00 per hour. Such conduct blatantly violated federal and state law, specifically 29 U.S.C. § 207(a)(1) and WIS. ADMIN. CODE § DWD. 274.03, respectively.

### C. As A Result Of Utilizing An Unlawful Overtime Rate, Defendants Admittedly Deducted And Did Not Compensate Mr. Shivalec For Overtime Hours Exceeding The Cost Of Personal Purchases

As a result of Defendants' admitted use of an unlawful overtime rate, Defendants admittedly deducted and did not compensate Mr. Shivalec for overtime hours exceeding the cost of personal purchases reimbursed through Defendants' "time trading system" on multiple occasions. (Def. Am. Resp. PPFOF, ¶¶ 104-105, 107-108, 110.)

As to other deductions that Defendants denied were excessive, those denials were premised on the argument that 29 C.F.R. § 3.5(a) allowed Defendants to "charge" Mr. Shivalec extra for taxes they paid on the "traded" personal purchases. (*See id.* at ¶¶ 102-103, 111-12.) However, this code section has no application to this case whatsoever. 29 C.F.R. Part 3 pertains to "contractors and subcontractors on public building or public work financed in whole or in part by loans or

---

[8] (Second Declaration of Ronald Olson, ECF No. 48 ("Second Olson Decl."), ¶ 1, Exhibit ("Ex.") F, ECF No. 48-1, p. 28 (MMMC 000029, timecard 44).)
[9] (*Id.* at p. 30 (MMMC 000031, timecards 46 and 48).)

6

grants from the United States," not anything relating to Mr. Shivalec's employment, and 29 C.F.R. § 3.5(a) relates to payroll deductions, not the sort of retroactive "charge" Defendants seek to apply.

Further, the record is devoid of any evidence of any such taxes paid by Defendants on time "traded" with Mr. Shivalec or of Defendants ever seeking reimbursement from Mr. Shivalec for the same, assuming they were paid in the first instance.

Thus, it is undisputed for purposes of summary judgment that Defendants made unlawful deductions of Mr. Shivalec's overtime hours owed on eleven (11) occasions, (*see* Plaintiff's Proposed Findings of Fact, ECF No. 29 ("PPFOF"), ¶¶ 102-112), and not simply the five (5) occasions admitted by Defendants. (Def. Am. Resp. PPFOF, ¶¶ 104-105, 107-108, 110.)

## II. DEFENDANTS VIOLATED THE FLSA AND WWPCL BY FAILING TO COMPENSATE MR. SHIVALEC FOR HIS HOURS OF COMPENSABLE WORK AS RECORDED ON HIS TIMECARDS

In *Anderson v. Mt. Clemens Pottery Co.*, the United States Supreme Court stated:

> An employee who brings suit under s 16(b) of the Act . . . has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of the statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the *employer* who has the duty under s 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.
> . . .
>
> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. . . . In such a situation, we hold that an employee has carried out his burden if he proves that he has in fact performed worked for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the

7

> *precise amount* of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

328 U.S. at 686-88 (emphasis added).

Here, Defendants utilized a mechanical punch clock for purposes of recording Mr. Shivalec's hours worked, (PPFOF, ¶ 39), and maintained Mr. Shivalec's physical timecards in compliance with the FLSA.[10] By procuring production of the same, Mr. Shivalec satisfied his legal burden of establishing his hours worked and, therefore, his damages. *See Mt. Clemens Pottery Co.*, 328 U.S. at 686-88; *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008) (stating that "once a plaintiff establishes a violation of the FLSA, the plaintiff must establish damages, and . . . the task is not a difficult one where the employer has kept time records in compliance with the FLSA. In that circumstance, the accurate time records will establish the amount of damages"); *Schremp v. Langlade Cty.*, 2012 WL 3113177, at * 3 (E.D. Wis. July 31, 2012)[11] (stating that "[w]here an employee maintains time records and there is no indication that the employer instructed the employee not to accurately report his time, the accurate time records will establish the amount of damages").

In Defendants' Response Brief, Defendants eschew their own records, claiming that because Mr. Shivalec did not punch out for various, allegedly non-compensable, activities during his continuous workday, "the most reliable record of compensable hours that Shivalec worked are the handwritten times Olson recorded in the margins of Shivalec's time cards contemporaneously

---

[10] 29 C.F.R. § 516.2(a)(7) requires that such records must include the "[h]ours worked each workday and total hours worked each workweek." Defendants' timecards satisfy this requirement. (*See, e.g.,* Second Olson Decl., ¶ 1, Ex. F, ECF No. 48-1, pp. 1-48.)
[11] Mr. Shivalec previously filed this case with the Court as ECF No. 44-10.

8

with every pay period." (Def. Resp. Br., pp. 9-10.) Defendants' assertion is ridiculous and conflicts with their own arguments, controlling case law, and facts and evidence in the record.

First, Defendants' Response Brief explicitly states that Mr. Shivalec's "own time record notes," not Defendant Olson's handwritten hours, "reveal his true working time." (*Id.* at p. 22.) Supporting the accuracy of Defendants' timecards, the record shows that those notes were nothing more than a handwritten record of Mr. Shivalec's mechanical punches. (Plaintiff's Proposed Findings of Fact in Opposition to Defendants' Motion for Summary Judgment, ECF No. 40, ¶ 81.)

Second, Defendants' argument requires Defendant Olson to have specific knowledge of Mr. Shivalec's compensable hours worked separate and independent from his timecards. However, Defendants' statement of facts assert that Defendant Olson simply "trusted and presumed that Shivalec was performing the work he was supposed to be performing and taking the breaks that he was required to take," (Defendants' Proposed Statement of Facts, ECF No. 32 ("DPSOF"), ¶ 50), and "assumed that Shivalec was able to take his 30 minute break every day" (*id.* at ¶ 86), because he "did not know whether [Mr. Shivalec] was performing compensable work at any given time unless Olson was in the basement shop area observing him work." (*Id.* at ¶ 49.)

Further, there is no evidence in the record suggesting that Defendants used any system other than its mechanical punch clock and physical timecards to record Mr. Shivalec's hours worked. Indeed, at deposition, Defendant Olson repeatedly stated that when determining Mr. Shivalec's compensable hours worked, he based his handwritten hours on Mr. Shivalec's scheduled hours of work, (PPFOF, ¶ 55), and not Mr. Shivalec's mechanical punches, (Def. Am. Resp. PPFOF, ¶¶ 58-59), or any other record of his hours worked.

Third, testimonial evidence in the record demonstrates that Mr. Shivalec's timecards are an accurate record of his compensable hours worked during his employment with Defendants. For

9

example, the record shows that Defendant Olson expected Mr. Shivalec to record his hours of work accurately using Defendants' timecards, (PPFOF, ¶ 43), and that Mr. Shivalec, therefore, did the same.[12] (PPFOF, ¶ 44.)

Fourth, Defendants' argument runs contrary to "the continuous workday rule," under which "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *IBP, Inc.*, 546 U.S. at 28 (*citing* 29 C.F.R. § 790.6(b)). Pursuant to the "continuous workday rule," employees "**must** be compensated for time they spend doing what might otherwise be non-compensable activities if those activities occur during the period between commencement and completion on the same workday of an employee's principal activity or activities, subject to FLSA carve outs." *Mitchell v. JCG Indus. Inc.,* 753 F.3d 695, 696 (7th Cir. 2014) (emphasis added); *see also IBP, Inc.,* 546 U.S. at 37; *Pietrzycki v. Heights Tower Serv., Inc.*, 290 F.Supp.3d 822, 833, (N.D. Ill. 2017); *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F.Supp.3d 447, 476 (S.D.N.Y. 2014) (finding that alleged "noncompensable activities" cited by the defendant "undisputedly took place *during* the dancers' workday. Accordingly, there is no issue of fact with respect to the amount of time for which dancers are entitled to be compensated. They are entitled to be compensated for all hours worked between the time they logged in until the time they logged out") (emphasis in original); *Espenscheid v. DirectSat USA, LLC*, 2011 WL 10069108, at *21 (W.D. Wis. Apr. 11, 2011)[13]; *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 953 (W.D. Wis. 2008)

---

[12] In their response brief, Defendants assert that this is false because Mr. Shivalec did not punch out for breaks during his workday. (*See* Def. Resp. Br., p. 6.) However, such an assertion ignores the fact that Defendants did not require him to punch out during his workday for any reason other than leaving the premises for personal reasons, (Def. Am. Resp. PPFOF, ¶ 75), which the record shows he did. (*Id.* at ¶ 122.) Further, it belies Defendants' own statement of "facts" demonstrating that while Mr. Shivalec may have taken breaks throughout the day, those breaks were not duty-free and/or were less than thirty (30) consecutive minutes in duration, (DPSOF, ¶ 85), such that they were compensable and would not have been any less compensable if Defendants had required that he punch out for the same. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005); 29 C.F.R. § 790.6(b).

[13] Mr. Shivalec previously filed this case with the Court as ECF No. 44-11.

10

(stating that "[u]nder the FLSA, an employee must be compensated for *all* hours worked which is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness").

Regulations recognize that minor discrepancies between punches on a timecard and actual hours of work will happen and do not affect Defendants' responsibility to compensate Mr. Shivalec for all hours worked during his continuous workday as reflected on his timecards. *See* 29 C.F.R. § 785.48(a) (stating that "[m]inor differences between the clock records and actual hours worked cannot ordinarily be avoided"). Rather, the only "carve out" available to Defendants (*i.e.,* time for which Defendants were not required to compensate Mr. Shivalec) is bona fide meal periods. *See Mitchell*, 753 F.3d at 696 (stating that employee must be paid for entirety of workday, "except for the *bona fide* lunch break"); *see also Perez v. Mountaire Farms, Inc.,* 650 F.3d 350, 363 (4th Cir. 2011); *Salinas v. Starjem Rest. Corp.*, 123 F.Supp.3d 442, 472 (S.D.N.Y. 2015) ("All of the time worked during a continuous workday is compensable, save for bona fide meal breaks").

Here, Defendants do not argue that Mr. Shivalec's timecards are inaccurate because he did not record *bona fide* meal periods or duty-free breaks of at least thirty (30) consecutive minutes.[14] Rather, Defendants argue that Mr. Shivalec (may have) engaged in allegedly non-compensable activities during his workday[15] that, taken as a whole, (maybe) totaled thirty (30) non-consecutive minutes in duration. (DPSOF, ¶ 85 (stating as fact that Defendant "Olson believes that Shivalec

---

[14] Under the FLSA, a *bona fide* meal period is a duty-free period lasting "30 minutes or more," with the possibility of a shorter period sufficing "under special conditions." 29 C.F.R. § 785.19; *Burks v. Equity Grp.-Eufaula Div., LLC*, 571 F.Supp.2d 1235, 1247-48 (M.D. Ala. 2008) (stating that "Courts have held entire meal breaks to be compensable under the FLSA when employees continued to have job duties during their breaks" and collecting cases). Under the WWPCL, employers "*shall pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work.*" WIS. ADMIN. CODE § DWD 274.02(3) (emphasis added). Thus, under both the FLSA and WWPCL, a break must be duty-free and at least thirty (30) consecutive minutes in duration to be non-compensable. *Id.*; 29 C.F.R. § 785.18; *Petrone v. Werner Enterprises, Inc.*, 121 F.Supp.3d 860, 869 (D. Neb. 2015), *on reconsideration in part*, 2016 WL 1559571 (D. Neb. Apr. 18, 2016), *and amended*, 2017 WL 510884 (D. Neb. Feb. 2, 2017).

[15] (*See* Def. Resp. Br., pp. 6-9).

11

was able to take his 30 minute break every day based on the frequency that he came upstairs to eat breakfast and lunch, the frequency that he went outside to make calls, and the amount of work he performed for his family and friends while at the shop.").)

However, the activities Defendants cite occurred *after* Mr. Shivalec punched in for the workday and *before* he punched out for the workday, *i.e.,* during his continuous workday. Indeed, evidence in the record demonstrates that Mr. Shivalec performed compensable work after punching in and before punching out, (PPFOF, ¶¶ 45-46), and that Defendants assumed he performed compensable work while punched in. (*Id.* at ¶ 47; DPSOF, ¶ 50.) Therefore and because Defendants do not assert such activities were duty-free and at least thirty (30) minutes in duration,[16] they were compensable,[17] do not affect the accuracy of Mr. Shivalec's timecards, and do not relieve Defendants from liability for failing to compensate him for all hours recorded on those timecards.[18]

For all such reasons, this Court should enter summary judgment against Defendants because the record makes clear that Mr. Shivalec's timecards are an accurate record of his hours

---

[16] Although Defendants carry the burden of demonstrating that such activities were non-compensable, *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 747 F.Supp.2d 1043, 1051 (E.D. Wis. 2010), Defendants' statement of facts makes clear that they did not even know the length of any such activities. (DPSOF, ¶¶ 66, 84, 95, 105.)

[17] *Bona fide* meal periods are distinguishable from compensable, "regular breaks," consisting of less than thirty (30) consecutive minutes. 29 C.F.R § 785.18; WIS. ADMIN. CODE § DWD 274.02(3); *Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.,* 873 F.3d 420, 425 (3d Cir. 2017), *cert. denied sub nom. Am. Future Sys., Inc. v. Acosta*, 138 S. Ct. 2621 (2018); *Petrone*, 121 F.Supp.3d at 869 ("It is the general rule under federal law that breaks of less than thirty minutes are compensable"); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 442 (S.D Ind. 2012); *Kasten*, 556 F.Supp.2d at 953.

[18] If Defendants took issue with Mr. Shivalec's allegedly non-compensable activities, their recourse was to discipline him, not fail to compensate him. *Am. Future Sys., Inc.*, 873 F.3d at 432 (stating that "[w]here the employee is taking multiple, unscheduled nineteen minute breaks over and above his or her scheduled breaks for example, the employer's recourse is to discipline or terminate the employee—not to withhold compensation"); *see Kasten*, 556 F.Supp.2d at 953 (stating that a "Defendant is entitled to take disciplinary measures against employees who take excessively long breaks, but it cannot be permitted to offset such time against uncompensated work time in its attempt to satisfy the requirements placed on it under the FLSA.").

worked and Defendants indisputably did not compensate Mr. Shivalec for all such hours.[19] (Def. Am. Resp. PPFOF, ¶¶ 51, 54, 56, 58-59.)

**III.     EVEN IF THE COURT APPLIES THE JUST AND REASONABLE INFERENCE STANDARD, DEFENDANTS VIOLATED THE FLSA AND WWPCL BY FAILING TO COMPENSATE MR. SHIVALE FOR HIS HOURS OF COMPENSABLE WORK AS RECORDED ON HIS TIMECARDS**

Even if this Court believes some inaccuracy exists with Mr. Shivalec's timecards such that it applies the just and reasonable inference standard to this case, Defendants still violated relevant law by failing to compensate Mr. Shivalec for all hours recorded on his timecards because his timecards satisfy his legal burden of proof under that standard.[20] *See, Gatto v. Mortg. Specialists of Illinois, Inc.*, 442 F.Supp.2d 529, 535 (N.D. Ill. 2006). Thus, the burden of proof in this case would actually be Defendants', not Mr. Shivalec's, "to come forward with evidence of the *precise amount* of work performed or with evidence to negative the reasonableness of the inference to be drawn from [Mr. Shivalec's] evidence." *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88 (emphasis added). If Defendants fail to do so, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

Here, Defendants cannot carry this burden because they offer nothing more than vague and speculative statements that, at best, suggest that from time-to-time Mr. Shivalec <u>may</u> have eaten breakfast and lunch at work, worked on personal items, and talked on the phone for unknown and unascertainable periods of time on unknown and unascertainable dates, while maybe or maybe not

---

[19] The record shows that Defendant Olson shaved approximately 182.3 hours of compensable time from Mr. Shivalec's timecards, (PPFOF, ¶ 120), and that Defendants owed him $5,281.85 before liquidated damages. (*Id.* at ¶ 121.)

[20] Defendants' complaints regarding the alleged inaccuracy of their timecards are unavailing and do not render them any less demonstrative of Mr. Shivalec's compensable hours worked or his damages. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 315 (7th Cir. 1986) (finding that the defendant had to "suffer the consequences" for any inaccuracy that "made it difficult to ascertain the truth" about hours worked because it was defendant's burden to keep accurate pay records); *see also Mt. Clemens Pottery Co.*, 328 U.S. at 688 (stating that "even where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, the employer, having received the benefits of such work, cannot object to the payment for the work on the most accurate basis possible under the circumstances").

13

simultaneously performing compensable work. Clearly such evidence does not suffice. *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88; *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F.Supp.2d 803, 817 (N.D. Ill. 2011) (finding that employer's "speculations" regarding the employee's conduct were insufficient and did "no more than raise a metaphysical doubt about the other side's evidence"). Thus, although Mr. Shivalec's damages may "be only approximate" under the just and reasonable inference standard, summary judgment should be entered and those damages awarded.

## IV. DEFENDANTS' ARGUMENT THAT THEY PAID MR. SHIVALEC MORE THAN HE WAS OWED IS LEGAL FICTION

In their response brief, Defendants assert:

> Shivalec supported his motion by providing a few examples of bi-weekly pay periods where he believes he was not compensated fairly. But he failed to account for the value of tax withholding paid by Milwaukee Cycles for the cash and goods he was paid. *See* 29 CFR §538 (taxes assessed against the employee and forwarded to the government are included as wages). Most importantly, he ignored that when the total overtime compensation he was owed is compared to the total compensated [sic] he was paid throughout his employment, he was actually paid more than he was owed.

(Def. Resp. Br., pp. 14-15.) Specifically, Defendants assert "he was paid $127.70 more than he was owed." (*Id.* at p. 1.) Stated simply, Defendants' argument is legal fiction.

First, and as explained herein and in Mr. Shivalec's Principal Brief, Defendants very clearly failed to compensate Mr. Shivalec for all hours worked as recorded on his timecards. Specifically, Defendants owe Mr. Shivalec $5,281.85 before liquidated damages. (PPFOF, ¶ 121.) That he was *underpaid* is the entire basis of this case.

Second, Defendants rely solely on "29 CFR §538" in support of their argument. (*Id.* at p. 14.) However, 29 C.F.R. § 538 does not exist. For the sake of argument, Defendants presumptively meant 29 C.F.R. § 531.38, which states, "[t]axes which are assessed against the employee and which are collected by the employer and forwarded to the appropriate governmental agency may be included as

14

'wages' although they do not technically constitute 'board, lodging, or other facilities' within the meaning of section 3(m)."

Here, Defendants' argument does not concern employee-side taxes deducted from Mr. Shivalec's wages. Rather, they apparently seek to count employer-side taxes *they paid* as wages paid to Mr. Shivalec. In other words, they seek reimbursement for taxes they had to pay. Neither 29 C.F.R. § 531.38 nor any other code section allows any such conduct and Defendants cite none. Thus, correct citation or not, Defendants' argument is completely unsupported by law.

## V.     MR. SHIVALEC IS ENTITLED TO LIQUIDATED DAMAGES

In his Principal Brief, Mr. Shivalec outlined the facts and law supporting his entitlement to liquidated damages on all overtime wages owed under the FLSA, 29 U.S.C. § 216(b), and the reasonableness of the same on all non-overtime wages owed under Wisconsin law, WIS. STAT. § 109.11(2)(a). (Plaintiff's Brief in Support of His Motion for Summary Judgment, ECF No. 28, pp. 22-26.)

In response, Defendants simply stated that liquidated damages should not be awarded "because he was paid more than he was owed." (Def. Resp. Br., p. 25.) On the contrary, Defendants demonstrably owe Mr. Shivalec $5,281.85 before liquidated damages, (PPFOF, ¶ 121), and the regulatory section Defendants relied upon in claiming he was paid more than he was owed, "29 CFR §538," does not exist and the correct section does not apply.

Because Mr. Shivalec provided the Court with facts and law supporting an award of liquidated damages and Defendants failed to proffer anything of substance in response, this Court should award liquidated damages to Mr. Shivalec.

## **CONCLUSION**

15

For all of the foregoing reasons, as well as those stated in Mr. Shivalec's Principal Brief, Defendants indisputably violated the FLSA and WWPCL by failing to compensate Mr. Shivalec for all hours they suffered or permitted him to work, including at an overtime rate of pay for all hours worked in excess of forty (40) in a workweek. The record further demonstrates that liquidated damages are appropriate in an amount equal to all overtime compensation owed, pursuant to the FLSA, and in an amount equal to fifty percent (50%) of all non-overtime compensation owed, pursuant to the WWPCL.

Dated this 8th day of October, 2018.

                                        WALCHESKE & LUZI, LLC
                                        Counsel for Plaintiff

                                        s/ *James A. Walcheske*
                                        James A. Walcheske, State Bar No. 1065635
                                        Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
15850 West Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com