# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEVEN E. SHIVALEC,

        Plaintiff,

    v.                             **Case No. 17-CV-1245**

MILWAUKEE MIXED METAL CYCLES LLC, et al.,

        Defendants.

## DECISION AND ORDER

### INTRODUCTION

Plaintiff Steven Shivalec brought this action against defendants Milwaukee Mixed Metal Cycles, LLC (Milwaukee Cycles) and Ronald Olson, alleging violations of the Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws. The parties have filed cross-motions for summary judgment. (ECF Nos. 27, 31.) Shivalec argues that there is no genuine issue of material fact as to whether the defendants violated the Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws by failing to compensate him for all hours worked, including at the correct overtime rate of pay for all hours worked in excess of forty hours in a workweek. (ECF No. 28.) Defendants argue

that there is no genuine issue of material fact that Shivalec has failed to prove his damages. (ECF No. 38.)

All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 4, 11). The parties' motions have been fully briefed and are ready for resolution.

## FACTS

Milwaukee Cycles is a motorcycle dealer and repair shop that is owned and managed by Ronald Olson in Milwaukee, Wisconsin. (ECF No. 41, ¶¶ 1-2; ECF No. 49, ¶ 7.) Steven Shivalec was employed by Milwaukee Cycles as a motorcycle mechanic from December 1, 2015, through August 26, 2017. (ECF No. 49, ¶¶ 8-9.)

Shivalec's job duties were to diagnose and repair motorcycles. (ECF No. 49, ¶ 9.) Olson assigned him work by way of a "job board." (*Id.*, ¶ 24.) The "job board" organized work orders in order of priority—work orders on top were "top priority," while those at the bottom were "lowest priority." (*Id.*) After Shivalec completed a work order, he filed it at the very bottom of the board. (*Id.*, ¶ 26.)

His work schedule was Tuesdays through Fridays, 9:00 a.m. to 6:00 p.m., and Saturdays, 9:00 a.m. to 3:00 p.m. (ECF No. 49, ¶ 32.) On the days that he was scheduled to work eight or more hours, Olson expected him to take an uncompensated thirty-minute lunch break. (*Id.*, ¶ 71.) Shivalec was free to take this break at any time. (*Id.*, ¶ 72.)

Shivalec's starting hourly wage was $18.00 per hour, which increased to $22.00 per hour starting on February 16, 2016. (ECF No. 49, ¶¶ 16-18.)

Milwaukee Cycles used a mechanical punch clock, but the purpose of the punch clock is disputed. (*See* ECF No. 41, ¶ 8; ECF No. 49; ¶ 39.) Defendants allege that the punch clock was used to ensure that all employees were on the premises during their scheduled hours of work. (ECF No. 32, ¶ 9.) Shivalec alleges it was used to record the employees' compensable hours of work. (ECF No. 29, ¶ 39.) Nevertheless, it is undisputed that Shivalec was expected to "punch in" when he arrived for the start of his shift and "punch out" at the end of his shift. (ECF No. 41, ¶ 11.) Shivalec was not expected to "punch out" for breaks unless he left Milwaukee Cycles' property for personal reasons. (ECF No. 49, ¶ 69.)

Shivalec was compensated on a bi-weekly basis. (ECF No. 49, ¶ 51.) To conduct payroll, Olson would collect Shivalec's timecards to ensure that he was present during his scheduled hours of work. (*See* ECF No. 41, ¶ 24.) Olson would then manually calculate the number of compensable hours Shivalec worked each day of the pay period, handwrite those calculations on Shivalec's timecards, and add them up to determine the total number of compensable hours Shivalec worked in the pay period. (ECF No. 49, ¶¶ 54, 56.) Olson's handwritten calculations were not based on Shivalec's mechanical time punches. (*Id.*, ¶¶ 58-59.) Rather, Olson's calculation was based on Shivalec's scheduled

hours of work (deducting a half hour for lunch) and any overtime Shivalec worked. (ECF No. 30-2 at 14; *see id.* at 9.)

Defendants usually compensated Shivalec by way of a physical paycheck. (ECF No. 49, ¶ 62.) However, Shivalec requested that his overtime be paid in cash so that his paystubs reflected that he was working only eighty hours per pay period. (ECF No. 41, ¶ 135.) Defendants also operated a "time trading" system whereby Olson would purchase personal items through Milwaukee Cycles on behalf of and for Shivalec, and then Shivalec would reimburse Milwaukee Cycles by Olson deducting the value of those items from Shivalec's compensable hours of work. (ECF No. 49, ¶¶ 92-93.) Olson reported Shivalec's payments that were made in cash and goods as wages to the Internal Revenue Service in order to pay withholding taxes on the compensation. (ECF No. 41, ¶ 145.)

Shivalec alleges that defendants violated the Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws by failing to compensate him for all hours worked as reflected by his time punches on his timecards, including at the correct overtime rate for all hours worked in excess of forty hours in a workweek.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict

for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from the evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001)). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. Overtime Rate

The Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws mandate that employers pay employees an overtime rate of one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce … for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); Wis. Admin. Code § DWD 274.03 ("[E]ach employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week.").

In moving for summary judgment, Shivalec argues that defendants failed to compensate him at the correct overtime rate. (ECF No. 28 at 10.) He states that, "subsequent to increasing [his] hourly rate to $22.00 beginning the workweek of February 16, 2016, Defendants and Mr. Shivalec agreed that Defendants would compensate him at an overtime rate of $28.00 per hour for all hours worked in excess of forty (40) in a workweek rather than time and one-half, or $33.00 per hour." (*Id.* at 20.) He argues that that "agreement facially conflicts with the [Fair Labor Standards Act] and [Wisconsin's Wage Payment and Collection Laws]," even though he consented to the lower rate. (*Id.*; *see Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) ("[W]e have held that [Fair Labor Standards Act] rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.").)

In response, defendants argue that Shivalec "fail[s] to account for the value of tax withholding paid by Milwaukee Cycles for the cash and goods he was paid." (ECF No. 47 at 14.) They contend that Shivalec was paid "more than he was lawfully owed for overtime" because his overtime rate of "$28.00 per hour was paid without any deduction for tax withholdings and Olson paid the required withholdings on behalf of Shivalec[.]" (*Id.)*

Shivalec argues in reply that defendants' taxation argument "does not concern employee-side taxes deducted from [his] wages," but rather "seek[s] to count employer-side taxes *they paid* as wages paid to [him]." (ECF No. 50 at 15.) (Emphasis in original.)

Under Fair Labor Standards Act regulations,

taxes which are assessed against the employee and which are collected by the employer and forwarded to the appropriate governmental agency may be included as "wages" …. This principal is applicable to the employee's share of social security and State unemployment insurance taxes, as well as other Federal, State, or local taxes, levies, and assessments. No deduction may be made for any tax or share of a tax which the law requires to be borne by the employer.

29 C.F.R. § 531.38. "[A]n employer is entitled to include as wages amounts deducted from an employee's pay for employee-owed taxes only if the employer actually collected the taxes and forward[ed] them to the appropriate governmental agencies." *Beltran v. Maxfield's LLC*, No. 13-C-1043, 2014 WL 7139808, at *1 (E.D. Wis. December 12, 2014).

Construing the evidence in favor of defendants, genuine issues of material fact exist as to whether defendants paid employee-side taxes on all overtime hours in which Shivalec was paid $28.00 per hour and, if so, whether Shivalec was paid at an overtime rate of at least $33.00 per hour after taking into consideration the taxes paid by defendants on behalf of Shivalec. As such, the court will deny Shivalec summary judgment on his claim that defendants paid him an unlawful overtime rate.

## II.  Hours Worked

The Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws require that an employee must be compensated for all hours worked. *See* 29 U.S.C. § 206(a); 29 C.F.R. § 778.223; Wis. Stat. § 109.03(1). Generally,

> the term "hours worked" will include: (a) All time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace and (b) all time during which an employee is suffered or permitted to work whether or not he is required to do so.

29 C.F.R. § 778.223.

"The [Fair Labor Standards Act] imposes an obligation on the employer 'to exercise its control and see that the work is not performed if it does not want it to be performed.'" *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.13). "Employers must … pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work." *Allen v. City of Chi.*, 865 F.3d 936, 938 (7th Cir. 2017) (citing *Kellar*, 664 F.3d at 177).

"However, the [Fair Labor Standards Act] stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Kellar*, 664 F.3d at 177. "The employer's knowledge can be either actual or constructive." *Allen*, 865 F.3d at 938 (citing *Kellar*, 664 F.3d at 177). "An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable

diligence." *Allen*, 865 F.3d at 938 (citing *Hertz v. Woodbury County*, 566 F.3d 775, 781 (8th Cir. 2009)).

In moving for summary judgment, Shivalec argues that defendants violated the Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws by (A) not compensating him based on his actual hours of work as recorded on his mechanically-punched timecards, and (B) automatically deducting thirty minutes of compensable time when he did not take a duty-free lunch break of at least thirty consecutive minutes. (ECF No. 28 at 10.)

## A. Calculation of Shivalec's Compensable Hours Worked

Shivalec argues that he should have been paid in accord with his timecard punches. (ECF No. 28 at 12-14.) He contends that (1) "[he] recorded his work hours accurately using Defendants' punch clock and timecards" (ECF No. 28 at 12); (2) "Olson did not take any action to stop or prevent him from performing compensable work before the start or after the end of his scheduled shift" (*id.*); (3) "Defendants had actual knowledge—or at the very least constructive knowledge—of the hours, including overtime hours, [he] worked each workweek and intentionally disregarded the same to avoid compensating him" (*id.* at 13); and (4) "Olson's practice of calculating [Shivalec's] compensable hours based on his scheduled hours of work, rather than the hours of work recorded by [Shivalec], resulted in Defendants' shaving a total of approximately 182.3 compensable hours from [Shivalec's] timecards" (*id.* at 14).

In response, defendants argue that Shivalec's timecards are an inaccurate calculation of the time he worked because he was not required to (and didn't) punch out for breakfast, lunch, phone calls, or while he worked on personal projects at Milwaukee Cycles. (ECF No. 47 at 3-4.) As such, Olson's handwritten calculation is an accurate reflection of Shivalec's *actual* compensable hours of work, rather than the time reflected on Shivalec's timecards. (*Id.*)

In reply, Shivalec argues that defendants' argument "runs contrary to 'the continuous workday rule.'" Under the "continuous workday rule," "compensable time comprises 'the period between the commencement and completion on the same workday of an employee's principal activity, or activities …[,] whether or not the employee engages in work throughout all of that period." *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 226 (2014) (citing 12 Fed. Reg. 7658 (1947); 29 C.F.R. § 790.6(b) (2013)) (alteration in original). Shivalec contends that "the activities Defendants cite occurred *after* [he] punched in for the workday and *before* he punched out for the workday." (ECF No. 50 at 12.)

Olson testified at his deposition that Milwaukee Cycles did not use the punch clock as a method of calculating an employee's compensable hours of work:

> [T]he timecard is being used as a method of saying when he was in and out of the building, not necessarily that he was working.
> When I first bought the business, people were doing timecards by hand, showing up late and writing in a time. So I got the time clock as a babysitter so that guys would have to punch in when they got there.

(ECF No. 30-2 at 19.) Given the purpose of the punch clock, Olson testified that employees were not required to "punch out" during their workday unless they left Milwaukee Cycles' property for personal reasons:

> Q    [Did you have a conversation] [a]bout punching in and out?
>
> A    When he started, yes.
>
> Q    What was that conversation, assuming it was a conversation?
>
> A    That if he left the property during the day -- based on insurance -- a request from my insurance company, that if an employee left the property during the day, he was required to punch out and then punch back in when he returned to the property. Mainly for insurance reasons.
>
> Q    Did it --
>
> A    Solely for insurance reasons.
>
> Q    Okay. Did it matter why he was leaving or it was just a flat instruction that, "If you leave, you punch out and punch back in"?
>
> A    If he was leaving on Milwaukee Cycle business, then he wouldn't punch out.
>
> Q    So when would -- what -- what purpose would he have to have for leaving that he had to punch out?
>
> A    He never did it specifically, but I would have people go and run and get parts.
>
> Q    And your expectation is that if you went to get parts, you would punch out?
>
> A    No. Because then they're on Milwaukee Cycle business. You asked if they had to punch out every time they left.

Q      Yeah. I'm -- I understand -- my understanding from your testimony is that if they went on a business trip -- we'll use that term -- to get parts or whatever else in furtherance of the business, they did not have to punch out.

A      Correct.

Q      I'm wondering, then, when – what times they did leave, that they had to punch out?

A      If they were leaving for personal reasons.

(*Id.*, at 8.)

In addition, Olson claims that Shivalec regularly (1) ate breakfast after he punched in but before he started working (ECF No. 34, ¶¶ 49, 81), (2) worked on his personal motorcycles and machines after he punched in but before he started working in the morning or after he stopped working in the evening but before he punched out (*id.*, ¶¶ 92-93), and (3) took a duty-free lunch break without punching out (*id.*, ¶¶ 61-77, 87-88). *See* 29 C.F.R. § 785.48(a) ("In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work.").

Construing the evidence in favor of defendants, a genuine issue of material fact exists as to whether Shivalec performed compensable work from the time he "punched in" on his timecard to the time he "punched out." As such, the court will deny Shivalec summary judgment on his claim that defendants violated the Fair Labor Standards Act

and Wisconsin's Wage and Payment Collection Laws by failing to compensate him according to his timecards.

### B. Lunch

The Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws require that employees must be compensated for meal periods if the employee is not completely relieved from all work duties. 29 C.F.R. § 785.19(a) ("Bona fide meal periods are not worktime. …. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. …. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."); Wis. Adm. Code § DWD 274.02(3) ("The employer shall pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work.").

Shivalec argues that defendants automatically deducted a thirty-minute lunch break when he was scheduled to work eight or more hours in a day, even if he did not take a duty-free lunch break of thirty consecutive minutes. (ECF No. 28 at 15.) He contends that he "usually or customarily … ate lunch in Defendants' 'shop' while simultaneously working" (*id.*), and "explicitly told [Olson] he worked through his lunch approximately twice each month, on average, during his employment" (*id.* at 18) (emphasis omitted).

In response, defendants argue that, while Shivalec was expected to take a thirty-minute lunch break, it was not "automatically" deducted if Shivalec was unable to take his lunch break. (ECF No. 47 at 13.) They contend that "Shivalec used his lunch period to eat, speak to friends or family, or browse on his phone while he ate." (*Id.*) They also contend that "when Olson knew Shivalec was unable to take a lunch without performing work, he made note of it on Shivalec's timecard and did not deduct any compensable time from [his] time card." (ECF No. 47 at 13; *see* ECF No. 48-1 at 21.)

Shivalec's coworkers William Myles, Willem Vandersanden, and Casey Weiss allege that on many occasions they took a thirty-minute, duty-free lunch break with Shivalec, or witnessed him take a duty-free lunch break. (ECF No. 34, ¶¶ 12-27; ECF No. 35, ¶¶ 15-28; ECF No. 36, ¶¶ 11-19.)

In addition, Shivalec testified at his deposition that he never explicitly told Olson he was working through lunch:

Q     So did you tell [Olson] that you were working through lunch?

A     No. I never went up and told him that I was working through lunch.

(ECF No. 33-3 at 46.)

Construing the evidence in favor of defendants, a genuine issue of material fact exists as to whether Olson deducted thirty minutes of compensable work time from Shivalec's timecard when Olson knew that Shivalec did not take a duty-free lunch break of at least thirty consecutive minutes.  As such, the court will deny Shivalec summary

judgment on his claim that defendants "automatically" deducted thirty minutes of compensable work time even though Shivalec did not take a duty-free lunch break.

### III. Miscalculations

The Fair Labor Standards Act requires that overtime payments "be timely made." *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001); *see* 29 C.F.R. § 778.106. "[O]vertime generally must be calculated and paid on a pay period by pay period basis." *Id.* "Thus, the statute is violated even if the employer eventually pays the overtime amount that was due." *Id.*

In moving for summary judgment, Shivalec argues that, even accepting Olson's calculations of compensable hours as true, defendants failed to compensate him at an overtime rate for all hours worked in excess of forty in a workweek on seven occasions. (ECF No. 28 at 21-22.) In response, defendants argue that "when the total overtime compensation [Shivalec] was owed is compared to the total compensat[ion] he was paid throughout his employment, he was actually paid more than he was owed." (ECF No. 47 at 14-15; *see generally* ECF Nos. 48-2, 48-3.)

Construing the evidence in favor of defendants, even accepting Shivalec's argument, a genuine issue of material fact exists as to whether Shivalec suffered damages as a result of defendants' failure to pay him at an overtime rate on seven occasions throughout his employment. As such, the court will deny Shivalec summary judgment

on his claim that defendants failed to compensate him at an overtime rate for all hours worked in excess of forty in a workweek.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.  Violation of the Fair Labor Standards Act

As discussed above, to establish liability under the Fair Labor Standards Act a plaintiff must prove that he performed uncompensated work and that the employer had actual or constructive knowledge of the work. *Kellar*, 664 F.3d 169, 177 (7th Cir. 2011).

In moving for summary judgment, defendants argue that Shivalec's claim fails because "Milwaukee Cycles could not assume or have knowledge that Shivalec was not being paid for compensable work when Shivalec continually verified that his pay was accurate and [Olson] accepted Shivalec's review of his paychecks." (ECF No. 38 at 20.)

> This is because [Shivalec] kept track of his time with his own handwritten notes, and each week he compared his paystubs with his own handwritten notes, he spoke to his supervisor any time he had a problem with his pay and was allowed to review his time cards upon request, and then he destroyed the notes because he was satisfied that he was paid all of the wages he was owed.

(*Id.* at 19-20.) (Internal citations omitted.) Defendants also argue that Milwaukee Cycles "would have no reason to know if or when Shivalec did not take a lunch break where Shivalec continuously reviewed his pay with [Olson] on pay day and he never told [Olson] he worked through lunch or was unable to take a 30 minute break." (*Id.* at 21.)

However, Shivalec argues that he only *periodically* made handwritten notes or mentally tracked his hours, and, when he did, he "roughly compared" his recollection

with the hours reflected on his paystub and discussed errors with Olson if there was a "significant discrepancy." (ECF No. 39 at 9.) Shivalec also argues that he had a discussion with Olson regarding a discrepancy in his second paycheck and Olson told him that it was "state law" to deduct thirty minutes each day that he worked at least eight hours. (*Id.* at 8.)

Shivalec testified at his deposition that he did not keep track of his hours every day, but he did take some notes in the beginning of his employment with Milwaukee Cycles:

Q     You said that you were keeping track of your time and you were going to Ron if you saw something that was off?

A     I didn't do that all of the time. I didn't do it every day, no. I told you, I had some notes. I kept some notes more so in the beginning to make sure.

…

Q     And you were keeping track of your time?

A     No I don't think I was at that point. I did that in the beginning, like I said. When I first got there for the first few weeks, I was keeping track of that.

Q     When did you stop?

A     I don't know. Probably shortly after he explained that he had -- he had by law to keep that half an hour. And I was like, "Oh, all right." Well, then -- Okay.

(ECF No. 30-3 at 122-26.) Shivalec also testified that Olson knew that he didn't take a lunch break:

Q      Did you tell Ron that you were working through your lunch?

A      Well, he knew. He would -- He knew. He'd come down and see me doing it. Or sometimes he would come down and be standing there eating his lunch while I was working and eating my lunch.

Q      So he would just watch you work while he ate his lunch?

A      Sometimes. He said he needed to get away from the phones.

…

Q      So did you tell Ron that you were working through lunch?

A      No. I never went up and told him that I was working through lunch. I mean, he would know. He would come down and eat his lunch down there sometimes with us, like I told you, when he wanted to get away from the phones and stuff.

(ECF No. 33-3 at 17, 46.)

Construing the evidence in favor of Shivalec, genuine issues of material fact exist as to whether Shivalec performed work without compensation and whether Milwaukee Cycles had knowledge of the allegedly uncompensated work. As such, the court will deny defendants summary judgment on their claim that Shivalec cannot establish a *prima facie* Fair Labor Standards Act claim.

## II.    Damages

An employee bears the burden of proving the amount of uncompensated time that he is owed. *See Brown v. Family Dollar Stores of Indiana, LP*, 534 F.3d 593, 595 (7th Cir. 2008) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), superseded by statute on other grounds as stated in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 41 (2005)). "When

the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Anderson*, 328 U.S. at 687. "In that circumstance, the accurate time records will establish the amount of damages, and the general rule that precludes recovery of uncertain and speculative damages is appropriate." *Brown*, 534 F.3d at 595 (citing *Anderson*, 328 U.S. at 688).

However, when the employer's records are inaccurate or inadequate, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

In moving for summary judgment, defendants argue that Shivalec cannot prove his damages beyond mere speculation because his timecards are inaccurate and he cannot recall whether he was actually working on any specific day or at any specific time. (ECF No. 38 at 22-30.) With regard to the inaccuracy of Shivalec's timecards, defendants contend:

> Shivalec admitted that he was not performing compensable work for every minute he was clocked in on his time card. Shivalec admitted he at [sic]

breakfast when he came to work, and other employees observed him eat breakfast without performing compensable work. Shivalec admitted he ate lunch with other Milwaukee Cycle employees on the main floor in the shipping area and he did not perform compensable work during his lunch, but he did not punch out because he was not required to do so. Shivalec admitted that he stayed after hours to work on personal items because his tools were at Milwaukee Cycles. Shivalec admitted he made personal calls for extended periods of time and was not performing compensable work during those calls.

(*Id.* at 23.) (Internal citations omitted.)

In response, Shivalec argues that his timecards are an accurate record of his hours worked, and by procuring production of his timecards he "has satisfied his legal burden of establishing his hours worked and, therefore, his damages." (ECF No. 39 at 14-16.)

Contrary to defendants' argument, Shivalec testified at his deposition that: (1) he performed compensable work immediately after he punched in at the beginning of his shift until immediately before he punched out at the end of his shift (ECF No. 33-3 at 39-41, 62, 64-65); (2) he usually ate breakfast and lunch while he was working (*id.* at 17, 39-40, 63, 68-71); (3) he punched out before he started working on personal projects (*id.* at 41-42, 124-25); and (4) when he made personal calls, he usually placed them on speaker and continued to work (*id.* at 161-62, 173-75).

Construing the evidence in favor of Shivalec, a genuine issue of material fact exists as to whether Shivalec's timecards are an accurate record of his compensable hours of work. As such, the court will deny defendants summary judgment on their claim that Shivalec cannot prove his damages.

**IT IS THEREFORE ORDERED** that Shivalec's motion for summary judgment (ECF No. 27) is **denied.**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (ECF No. 31) is **denied**.

Dated at Milwaukee, Wisconsin this 27th day of December, 2018.

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
U.S. Magistrate Judge